## APRIL TERM, 1774.

### Harrison vs. Sterett.

THIS was an action on the case for a *nuisance;* and the plaintiff's declaration was as follows, viz. " Maryland: Baltimore county, sc. *James Sterett,* late of Baltimore county, gentleman, was attached to answer unto *Thomas Harrison* in a plea of trespass on the case, &c. And whereupon the said T. by *John Hall,* his attorney, complains, that he the said T. on the 21st day of May, in the year 1741, at the county aforesaid, was lawfully and peaceably seised in his demesne as of fee, and continually from thenceforth hitherto was seised, and yet is seised as aforesaid, of and in a certain parcel of land and marsh, part of a certain tract or parcel of land called *Cole's Harbour* and *Todd's Range,* with the appurtenances, in Baltimore county aforesaid; which said parcel of land and marsh, by the whole time aforesaid, was and is bounded on the south by a certain navigable river called the north west branch of Patapsco, which said navigable river, by the whole time aforesaid, used, uninterruptedly, to flow and reflow to and from the said parcel of land and marsh; by means of which said navigable river the said T. during the whole time aforesaid, hath enjoyed the advantage of sailing to and from the said parcel of land and marsh, with all manner of boats, flats, scows, and other vessels, and of loading and unloading, at the same land and marsh, all manner of goods, wares, and other merchandizes. And also that he the said T. on the said 21st day of May, in the year 1741, at the county aforesaid, was lawfully and peaceably seised in his demesne, as of fee, and continually from thenceforth hitherto was seised, and yet is seised as aforesaid, of and in certain other lots or parcels of land, lying and being in Baltimore Town, in the county aforesaid, with the appurtenances, bounded as follows, to wit: On the N. by Water-street, on the E. by Cork-street, on the S. by the N. W. branch of Patapsco river, and on the W. by Frederick-street; which same lots, by the whole time aforesaid, were bounded on the S. by a certain navigable river called the N. W. branch of Patapsco, which same navigable river, during the whole time aforesaid, used, freely and uninterruptedly, to flow and reflow to and from the same lots; by means of which said navigable river the said T. by the whole time aforesaid, hath enjoyed the advantage of sailing to and from the same lots, with all manner of boats, flats, scows, and other vessels, and of loading and unloading the same, at the said lots, with and of all manner goods, wares and

other merchandizes. Notwithstanding the said *James*, not ignorant of the premises, but maliciously intending wholly to depreciate the value of the said parcel of land and marsh, and the value of the lots, with the appurtenances aforesaid, and wholly to deprive the said T. of the advantage of sailing with all manner of boats, flats, scows, and other vessels, to and from the said parcel of land and marsh, and to and from the lots, with the appurtenances aforesaid, by means of the navigable river aforesaid, on the 1st day of April, in the year 1771, at Baltimore county aforesaid, the said navigable river then continuing to flow and reflow as aforesaid to and from the said parcel of land and marsh, and to and from the lots aforesaid, did throw, put and place, a very large quantity, to wit, 500 scow loads of sand, earth and stones, in the said navigable river, contiguous to the southern parts of the said land and marsh, and of the lots aforesaid, so that a great part of the said navigable river contiguous to the said land and marsh, and to the lots aforesaid, to wit, of the breadth of ten yards, and of the length of 100 yards, is become dry land, by reason whereof the value of the said parcel of land and marsh, and of the lots aforesaid, is greatly diminished, and the said T. is deprived of the advantage of sailing with boats, flats, scows, and other vessels, to and from the said land and marsh, and to and from the lots aforesaid; wherefore the said T. saith he is the worse, and hath damage to the value of 100*l*. current money; and therefore he brings his suit," &c.

The defendant pleaded the general issue. Plots were made and returned.

### BILLS OF EXCEPTIONS.

1. The plaintiff, at the trial, gave in evidence to the jury, a grant dated the 16th of February 1698, to *James Todd*, for the land called *Todd's Range*, of which the land in the declaration mentioned is parcel. He also proved the location of the same tract, in the manner laid down on the plots thereof returned in this cause. He further produced, and shewed in evidence, a deed from the said *James Todd*, the patentee, to *Charles Carroll*, Esquire, for the said tract of land. He further proved in evidence, that the present *Charles Carroll*, Esquire, son and heir at law of the bargainee, being seised of the said tract of land, and actually possessed thereof, did on the 21st of May 1747, by deed of bargain and sale, duly acknowledged and recorded, bargain, sell and convey, for the consideration in the said deed mentioned, to the plaintiff, *Thomas Harrison*, and his heirs, part of the said tract of land called *Todd's Range*, by the description in the said deed. He also proved in evidence, the location

of the said parcel of land in the said deed mentioned, agreeably to the plots thereof in this cause, beginning at the letters AA and running thence the black lines on the said plots, to the letter M. and from thence with the water to the letters AA aforesaid. He also offered in evidence the following acts of assembly, to wit: An act, entitled, " An act," &c. passed at November session 1766, ch. 22; an act, entitled, " An act," &c. passed at May session 1768, ch. 22; an act, entitled, " An act," &c. passed at September session 1770, ch. 7; and also proved in evidence the location made by the commissioners in virtue of the said act, and that the lots were by the said commissioners laid out in the same manner the plaintiff hath located the same on the plots in this cause, beginning at the letter A, &c. He also gave in evidence, that the plaintiff, at the time of placing and laying the dirt hereafter mentioned, and continually from the time of the deed aforesaid, in the year 1747, was seised in fee of the land in the same deed mentioned. He also proved in evidence, a bond dated the 6th of January 1767, given by himself and sureties, in pursuance of the directions of the act of assembly aforesaid.

It was proved also in this cause, that the N. W. branch of Patapsco river, in the declaration mentioned, always, unless when the tide was lower than common, and usual low water, overflowed the place described on the plots to begin at the point or prick near the letter W. on the W. side thereof, which said place is circumscribed on the N. by the red plain line running E. from, &c. and that the said land always was, since the memory of the witnesses, unless at such times as aforesaid, covered with water; and also that the water always flowed at a common low tide above the said red line first mentioned, into Water-street, described on the said plots; and also that the water always overflowed at common low tide the place where it is alleged the defendant has placed the dirt, &c. mentioned in the declaration. Likewise, that the water of the said branch does now, at a common low tide, flow over the place circumscribed as above, beginning at a point near the letter W. except the said dirt &c. alleged to be placed by the defendant, and does also at such tide surround the place where it is alleged the dirt, &c. was placed by the defendant as mentioned in the declaration. The plaintiff also proved in evidence, that at common high tide, loaded scows, drawing 15 inches of water and upwards, might well pass on the water of the said N. W. branch of Patapsco river to the land aforesaid of the plaintiff, opposite to and to the northward of the place described by the said letter W. on the plots; and that the defendant put and placed the stone, earth

and sand, mentioned in the declaration, and of the length and breadth described *in the same declaration,* from the same letter **W.** to the letter **X.** marked on the plots, whereby that space was made dry land, and the plaintiff is hindered from sailing, or in any manner navigating scows or vessels of any kind, to his lands aforesaid, as he might have done before the laying and placing the earth, stone and sand aforesaid, in manner aforesaid.

*Chase,* for the defendant, objected, that the proof is variant from the facts specified in the declaration; the proof being, that earth, sand, &c. was placed by the defendant in the water, but that the water flowed beyond the place where, &c. And he prayed the opinion of the court, and their direction to the jury, that the evidence aforesaid offered was materially variant from the matters alleged in the declaration in this cause, and did not support the same.

*Jenings,* (Attorney-General,) also for the defendant. The plaintiff declares that the defendant put a large quantity of stones and earth in the navigable river *contiguous* to the southern part of said land and marsh, and of the lots, so that a great part of the said navigable river, *contiguous* to said land and marsh, and to the lots, is become dry land. The intent of the declaration was to give notice of the charge, that the party may defend himself, and if he is at liberty to vary from it, it would be rather a trap than otherwise. The declaration is, that the defendant has thrown up earth, &c. *contiguous;* he must therefore prove it so, otherwise he may as well prove it in any other part of the river; and so set up to be superintendant general of it. The plaintiff has not declared, according to the truth of his case, which is essential for him to do.—*Gilb. L. E.* 240, 241, cites *Styles,* 385. Must prove the *way.*—*Vin. Evid.* 63, *pl. 3.* 1 *Salk.* 385, *pl.* 37. 2 *Salk.* 661. A person cannot contradict his declaration, but if it stands general, he may sometimes be admitted to explain it.—e. g. Suppose the plaintiff here had declared generally that the defendant threw stones in the river, but did not say in what place *particularly,* it standing generally, might be reduced to a certainty by evidence, and if proved contiguous to the plaintiff's land, it is still correspondent with the declaration, (being in the river,) though more particular, but it would have been bad on demurrer. The matter in issue is, whether he put stones, &c. *contiguous* to the plaintiff's land, and therefore that only must be proved. A verdict may help what is alleged, but can never add any new fact not mentioned in the declaration—*Salk.* 364. Cannot give in

April 1774.

Harrison
vs.
Sterett.

evidence what is not stated in the declaration—1 *Ray.* 110. 2 *Salk.* 662. *Gilb. L. E.* 289. 1 *Ray.* 605. Cannot bring *case* for an immediate wrong—1 *Str.* 635, 636. 2 *Ray.* 1399, 1402. *Salk.* 335. 11 *Mod.* 180. 3 *Bl. Com.* 123. 2 *Wils.* 313. *b.* 2 *Burr.* 1114, 1159.

THE COURT were of opinion, that the evidence was good and sufficient. The defendant excepted.

2. The defendant, to prove his plea, offered in evidence an act of assembly of this province, entitled, "*A Supplementary and additional act to the act,*" &c. passed at *August* session 1745, *ch.* 9. And prayed the opinion of the court, and their direction to the jury, that in virtue of the said act, the defendant had a right to make and finish the wharf begun by the defendant, and distinguished on the plot by the flourish, &c. from the letter W.

Whereupon the plaintiff produced, and offered in evidence, an act, entitled, "*An act for erecting a town,*" &c. passed at *July* session 1729, *ch.* 12; another act, entitled, "*An act,*" &c. passed at *July* session 1732, *ch.* 14; another act, &c. passed at *May* session 1747, *ch.* 21; another act, &c. passed at *May* session 1750, *ch.* 11; another act, &c. passed at *October* session 1753, *ch.* 20; and another act, &c. passed at *October* session 1753, *ch.* 27; and contended that the defendant had not any such right by virtue of the act of 1745.

*Chase,* for the defendant, contended, that an action would not lie for a public nuisance. He said that nuisances were distinguishable into two kinds—*public* and *private*; that a public nuisance is that act which is done to the injury or detriment of the community in general—3 *Bac. Ab.* 57, 686. It may be punished by indictment, or abated—1 *Haw. pl.* 212, 201. 199. Navigable rivers are deemed highways. That an action cannot be maintained by a private person for a public nuisance, he cited—2 *Wils.* 58. *b.* 4 *Co.* 73. *a.* 9 *Co.* 113. *a.* 3 *Blk.* 220; unless a particular or special damage ensues to some individual more than to the rest.

In this case the defendant is justified in what he has done, by the act of assembly of 1745, *ch.* 9.

The court cannot give a construction to the act of assembly repugnant to the plain and express words of the act, because that would be assuming a legislative power—*Foster.* 20, 21—otherwise where the meaning is doubtful—10 *Mod.* 344. 4 *Bac. Ab.* 652. 1 *Blk.* 91. All statutes, in which the public are concerned, shall be so expounded as that the end may be attained. This law was made to promote the public convenience in opposition to private benefit. Suppose the act meant to give

this benefit to those who held the lots or land adjoining; yet in this case the plaintiff does not, as the water flows between him and this improvement of the defendant. If the legislature intended to give the preference to the owners of land adjoining, they would have given them a fixed time to make their election. He instances cases of water mills and iron works, under writs of *ad quod damnum.* Baltimore-Town was laid out by this law, *ergo,* all who purchased did it under notice of these terms. All the acts relative to Baltimore-Town, passed before and since this law, have a saving of rights; but this act has not.

*Johnson, Hall* and *Chambers,* for the plaintiff. The counsel for the defendant are in this dilemma—The act of 1745, *ch.* 9, must have a reasonable construction according to the general intendment of it, or it must have its full operative force. If a reasonable construction is given, all persons will be restricted, except those having land adjoining the water; if not, all persons are allowed to make improvements. Improvements made before, by the owners of land adjacent, were deemed not altogether lawful. This law is therefore to have reference to such cases. If not restricted at all, a person might run a wharf quite across the basin, and obstruct the navigation.

The act of 1753, *ch.* 27, declares it unlawful to injure the navigation of Baltimore-Town.

The banks of a river, also the sea shore, are public by the law of nations. Notwithstanding this, the banks of a river are the property of those who possess the land adjoining—*Just. Inst.* 2, *lib.* 2, *tit.* 1. That ground which a river hath added to your estate by alluvion, (*i. e.* imperceptible increase,) is properly acquired by you, according to the law of nations.—*id. pa.* 7. So is the common law of England—2 *Blk.* 261, 262. Air and light are common to all; so is the sea, rivers and their banks—*Domat,* 379, 381, *s.* 1. Nothing is to be thrown therein to the prejudice of navigation—*id.* 384, *s.* 8, 9, 11. *Puffendorf,* 404.

For the construction of statutes, and the rules to be observed, *Vide Vin. tit. Statute,* 512, *s.* 12; 519, *s.* 81. The surest construction of a statute is by the rule and reason of the common law—*Co. Lit.* 272. *b.* To know what the common law was before the making any statute, is the very lock and key to set open the windows of the statute—2 *Inst.* 308. 10 *Mod.* 150, 245.

As to the several kinds of nuisances—3 *Blk.* 216, 217, 218. *Carth.* 252. Where an action will lie for a nuisance—1 *Bac. Ab.* 60, 61. What will be such special

damage as will maintain the action—*Carth.* 191, 451, 1 *L. Ray.* 486. 1 *Salk.* 15. *Year Book,* 14 *H. VIII. p.* 31. 27 *H. VIII. p.* 27. Land between the flowing of the tide belongs to the lord of the manor—4 *Inst.* 140, 141.

*Jenings,* (Attorney-General)in reply. By the act of assembly of 1745, *ch.* 9, *s.* 10, " All improvements, of "what kind soever, either wharves, houses, or other "buildings, that have or shall be made out of the water, "or *where it usually flows,* shall (as an encouragement "to such improvers,) be for ever deemed the right, title "and inheritance, of *such improvers,* their heirs and as- "signs, for ever." Baltimore-town was expected to be a place of considerable commerce, it was therefore ne- cessary to give it all encouragement. The making wharves, and erecting buildings, such as warehouses, &c. where vessels might lay along side and load, was a great object. But it has been said it only gives this be- nefit to the owners by construction. I answer, the words are express; in other parts of the act, "*purchasers and takers up of lots*" are mentioned—If the benefit was sole- ly intended to *them,* why were not the same expressions used?

It has been said, that it makes water lots of less value. But I answer, the public good is to be preferred to pri- vate emolument, if the owners of water lots might by combination prevent the town from carrying on trade. They are not excluded, but have an equal right with others, and may prevent others, by building themselves. The act is express, and no judicial power has a right to controul it. In *Fost. Rep.* 20, 21, a construction of a statute contrary to the letter was contended for on ac- count of inconvenience, and overruled. 1 *Blk.* 91—You must adhere to words where plain. Modern statutes are con- strued according to the words—2 *Wils.* 290. If *doubtful,* whether for or against the expressions, it is to be pre- sumed they meant what they said. By the plaintiff's counsel setting up what is called an equitable construction, they admit the letter of the law to be clear and explicit. To construe a law which is express, against the letter, is a very dangerous doctrine. Laws being rules of con- duct prescribed, it is necessary these rules should be understood; for, to oblige a man to obey a thing beyond his comprehension, is unjust. There is no other way of expressing the meaning of the legislature but by words; but if the law says one thing, and means another, it is ra- ther a trap than any thing else. One of the Roman Em- perors was accused of cruelty for having the laws wrote in a small character, and hung so high that they could not be read; this attempt is equally unjust. The defend-

ant has laid out large sums of money under this law; to say therefore it shall have a meaning directly contrary to the words, is highly unjust. There is no exception of persons, therefore none are excepted by construction—1 *Lev.* 31.

THE COURT were of opinion, that the said act of assembly of 1745, did not give the defendant a right or title to make and finish the wharf begun by him the defendant, and described on the plot by the flourish, &c. from the letter W. The Defendant excepted.

3. After divers witnesses had been produced by each of the said parties, and sworn, and examined in and for the support of the issue on their respective parts, the defendant by his counsel, prayed the direction of the court to the jury, that it was necessary the plaintiff, in order to support the issue in this cause, should prove and give evidence to the jury, that the plaintiff, by the occasion mentioned in the declaration in this cause, had before the bringing of this suit, sustained particular damage; and also that the evidence given for the plaintiff in this cause did not prove such particular damage.

*Jenings,* (Attorney-General,) for the Defendant. The *first count* in the declaration in this cause, states, that the plaintiff is seised of a parcel of land and marsh, part of *Cole's Harbour* and *Todd's Range.* That said land is bounded on the *S.* by a *navigable* river called the S. W. branch of Patapsco, which used to *flow and reflow from* the said land and marsh. That the plaintiff hath enjoyed the *advantage of sailing to and from said land and marsh, and unloading goods at the same.*

The *second count* states, that the plaintiff was seised of certain other lots or parcels of land, bounded on the N. by Water-street, on the E. by Cork-street, on the S. *by the N. W. branch of Patapsco river,* and on the W. by Frederick-street. That said lots were bounded on the south by a certain *navigable* river called the N. W. branch of Patapsco, which *used to flow and reflow from the said lots.* That by means of said river the plaintiff hath enjoyed the *advantage of sailing to and from said lots, and of loading and unloading at the same, goods and merchandizes.* That the defendant hath put dirt, &c. in *the navigable* river, *contiguous* to the southern part of the said land and marsh, and of the lots aforesaid, by reason whereof their value is diminished, and the plaintiff *is deprived* of the *advantage of sailing* with boats, flats, scows, and other vessels, *to and from* the said land and marsh, and *to and from* the lots aforesaid.

The objection is, that an action will not lie for a public nuisance without special damage; public wrongs being a general injury to the community, are to be redressed and punished by a public prosecution; private injuries entitle the party grieved to an action, therefore for a public nuisance no action lies unless accompanied with a special damage—3 *Bl.* 216, 219. 4 *Bl.* 167. 1 *Bac. Ab.* 60. 1 *Inst.* 56. *Cro. Eliz.* 664, *Feneux* and *Hovenden*—and takes the distinction where no prosecution will lie, as in case of a private way, there suit may be maintained.

Navigable rivers are highways, and therefore liable to the same rules as to ·nuisances done in them—3 *Bac.* 687, 614. *Bl.* 167. *Noy*, 103. 3 *Keb.* 640, 759. 1 *Hawk.* 199, *s.* 11; 201, *s.* 1. 12 *Mod.* 615, &c. That this, (if any,) is a public nuisance—1 *Haw.* 213. 3 *Bac.* 686.

The plaintiff should prove he has actually sustained some damages, and not by consequence that they may happen—*Carth.* 193, 194. *Comb.* 180. *Salk.* 12. *Bull. N. P.* 26. The damage must not arise merely from stopping up, or obstructing the way, for this is a general damage to all. Where the roads are bad, whoever has occasion to travel them, or to use for carts, &c. sustains damage, but this is a damage common to all. Those who live near the road *may* not be put to so much inconvenience as those who live more remote, as the latter may have more frequent occasion to travel than the former—*Com.* 60. There is no ground for this action, but what will apply to others; all people in the county and town are more or less prejudiced by stopping the highways, therefore, if the plaintiff may bring a suit, every other person may; that he is deprived of sailing with boats, &c. so is every other person.

A man might with equal propriety bring a suit against an oversee" of the roads for suffering them to be out of repair, whereby the value of his land was diminished, and he could not pass and repass, &c. and might allege, that as he lives nearest the nuisance, no person can be so greatly prejudiced. It is said the matter should be left to the jury—I answer, this is to gain a verdict, and then the argument would be that it was supposed to be proved.

It is the province of the court to direct the jury whether the fact be sufficiently proved, and the court are to take care that damages be proved—1 *Ray.* 109. It is the court's duty to determine matters of law, and not permit a verdict to be found on variant or illegal evidence. Before the law can be ascertained, the court must take cognizance of so much of the fact as is necessary to form a judgment of the law.—*Ex facto jus*

*oritur;* and to tie them up from considering the fact, would be preventing them from determining the law.

If a witness is interested, he shall be rejected; but whether he is or not, is a matter of fact. If a man declares one thing, and proves another, whether the proof is variant, is a fact. If there is nothing more necessary than to give evidence of *something,* the court will always be precluded from their determination by this doctrine.

Suppose the plaintiff had proved nothing at all, he could not have maintained his suit; and to prove a thing immaterial, and which does not affect the question, is the same. The gist of the action here is special damage; there is none alleged in the declaration sufficient to support the suit on our principles. The declaration is in the form of the indictment. Something further then must be proved, but there is no evidence of other matter—12 *Mod.* 263.

*Chase,* on the same side. To support an action for a public nuisance, it is incumbent on the plaintiff to prove a *special* and *particular* damage, actually sustained, *prior* to the commencement of the suit. No action lies for a public nuisance for a special damage, unless it be proved positive and direct, and confined to the plaintiff alone, and shall be previously and positively sustained before the suit brought, and not a damage sustained in common with other persons, or consequently and argumentatively—3 *Blk. Com.* 220. 2 *Wils.* 58. *b.* 5 *Co.* 73. *a.* 9 *Co.* 113. *a. Co. Litt.* 56. *a.* Year book, 27. *H. VIII. p.* 27, *Baldwin's* opinion.—That one man's being subjected to a greater *inconvenience* than another, is not sufficient to maintain a private action, is supported by *Holt's* opinion in 1 *L. Ray.* 486.

No individual can sustain a damage for a public nuisance, unless it be a special damage which is not common to other persons; it must be direct, and not consequential—1 *Salk.* 15. 12 *Mod.* 262. *Comb.* 480. *Comyn,* 58. *Carth.* 451. *Holt,* 10. 1 *Ray.* 486. 1 *Salk.* 12. *T. Jones,* 156. 1 *Ray.* 494. *Carth.* 196.

The case in 1 *Ray.* 486, is distinguishable from the present case; because in the *per quod* in *Raymond* there is a *special* and *particular* damage *shewn*—In this case it is not so, for the declaration specifies that the *value* of the plaintiff's land was greatly *diminished,* and that he was deprived of the *advantage of sailing boats,* &c. to and from the said *land.*

This case may be compared to an action for *words not actionable,* in which a *special* damage must be *alleged* and *proved;* therefore in this case there must be proof of a particular damage sustained, antecedent to the bringing the suit.

He puts the case of an action by a master for beating his servant, in which the allegation is general *per quod servitium amisit;* but proof must be made of a loss of service. He admits that the charge may be general, but it must be specially proved—*Carth.* 194. *Comb.* 180. 1 *Show.* 243, 255. *Holt,* 6. 3 *Mod.* 389.

To enable the plaintiff to maintain this action, the damage must be *direct* and not consequential. Here there has been no proof of positive damage.

*Johnson,* Contra. The general rule is admitted with the exception. The plaintiff had an exclusive right to lade and unlade boats, &c. therefore he sustained a particular damage. No person was concerned in the diminution of the value of his land but himself. The position taken, that there must be a direct and positive damage, is denied. The jury must say whether a particular damage has resulted from the nuisance; and the direction of the court ought not to extend further than to direct the jury that they must find a particular damage in order to give a verdict for the plaintiff.

The Court directed the jury, that it was necessary the plaintiff, in order to support the issue on his part, in this cause, should prove and give in evidence to the jury, that he, the plaintiff, by the occasion mentioned in the declaration in this cause, had, before the bringing of this suit, sustained particular damage; but the court refused to give any opinion, or direction to the jury, whether the evidence offered was sufficient to prove such special damage, but declared the weight and force thereof were proper to be left to the jury; and left the same with the jury for their consideration accordingly.

Judgment was confessed upon terms, a juror having been withdrawn by consent.