# MARGARET HAMILTON *vs.* JOHN WHITRIDGE and others.

Where a motion to dissolve is heard upon bill, answer and testimony, taken under the act of 1835, ch. 380, if the bill shows a case entitling the parties to the injunction, it will not be dissolved if the equity is not denied by the answer.

A court of equity has jurisdiction to prohibit, by injunction, a party from creating or erecting the public nuisance of a *bawdy-house,* upon a bill filed by private individuals, alleging that the close proximity of such a nuisance will deprive the complainants of the comfortable enjoyment of their property, and greatly depreciate and lessen its value.

Hamilton *vs.* Whitridge, *et al.*

The absence of precedents, though not to be overlooked entirely, does not, of itself, determine questions of jurisdiction; adjudged cases are consulted to ascertain their reason and spirit, which are the foundation of the law.

Courts are not to assume jurisdiction, but they may amplify remedies and apply rules and general principles for the advancement of substantial justice.

A party injured by a public nuisance may apply to a court of equity to prevent such nuisance, if its existence will cause a substantial prejudice to his property, or the reasonable enjoyment thereof.

The usual practice of raising the objection of multifariousness, as to parties, is by *demurrer*, but when raised *at the hearing* it is not *always fatal*, and will be allowed at the discretion of the court.

But where the court can see that the reason of the rule, upon which such objections are founded, does not apply, and the objection is not made by demurrer, the court ought not to interfere *sua sponte.*

Where the answer to a bill filed by several parties, to prevent the erection of a public nuisance, takes no defence upon the ground of multifariousness, and under such bill the real point in controversy can be determined, as well as if there were as many suits as there are plaintiffs, an objection of multifariousness, taken at the hearing, cannot be sustained.

APPEAL from the Circuit Court for Baltimore city.

In this case an injunction was granted upon a bill filed by the appellees, on the 29th of April 1856, restraining the appellant from occupying and using a house which she had purchased, on Frederick street, in the city of Baltimore, as a house of ill-fame. The allegations of the bill and answer are fully stated in the opinion of the court below. After answer filed a motion to dissolve the injunction was made by the defendant, and testimony, to support the allegations of the bill, was taken under the act of 1835, ch. 380. The purport of this testimony is sufficiently stated in the opinion of the court below and of this court. The defendant excepted to the testimony of some of the witnesses, in so far as they speak of what they had heard as to her keeping a bawdy-house, and to their testimony as to the common rumor or reputation that she keeps a bawdy-house. She also objected to the transcripts of the records of indictments against her, so far as said indictments and confessions or pleas of guilty are offered to prove that she kept a bawdy-house at the time this bill was filed, or to prove that she intended to occupy the house mentioned in the bill as a public bawdy-house. Upon the hearing of the motion to dis-

17      v. 11

solve, upon bill, answer and the above mentioned testimony, the court, (KREBS, J.,) delivered the following opinion:

"The bill filed in this case, by the complainants above named, and others, alleges, that the defendant has been long notorious, in the city of Baltimore, as the keeper of a house of ill-fame, and now keeps such a house in another part of the city; that she has recently purchased the premises designated as No. 51, Frederick street, in said city, and is now repairing and improving the said premises with the design of occupying them for purposes of prostitution, and as a common bawdy-house, to their great detriment and injury. They allege that they reside in the immediate neighborhood of said premises, and own property adjacent thereto; one of them, Rezin Haslup, residing in the house No. 49, immediately adjoining the said premises. That in addition to the wrong and injury they would suffer with their fellow citizens generally, by the creation of the nuisance, in case those premises should be occupied by her for the unlawful and immoral purposes mentioned, *they will be especially wronged and injured,* inasmuch as they will be severally deprived of the comfortable enjoyment of their property, and that it will be *greatly depreciated* and *lessened* in value, by its close proximity to the premises which, they allege, she is about occupying for the said purposes. They also aver, that they have no adequate remedy at law to prevent the evil complained of, and are remediless save in a court of equity, and pray for an injunction to restrain her from moving into and occupying the said premises, &c., which was ordered and issued.

"The defendant, in her answer to this bill, admits that she has purchased the house No. 51, Frederick street, that she has had it repaired and intends occupying it; that the complainant, Haslup, owns and occupies the house next adjoining. She denies that either Whitridge, Horton or McCandless reside on Frederick street; the former, she alleges, lives on Gay street, in a house which is not in sight of her's; that Horton's dwelling is in another part of the city, though his shop, in which he carries on his business, is in Frederick street, some six or eight doors from hers, and that McCandless carries on

his trade in a shop in that street, at a still greater distance from her house. She declines answering any of the allegations in the bill, in regard to the character for which she has been notorious in the city, and the manner in which she is now employed, and the purposes for which she is now repairing and improving, and intends occupying the said house, and insists, that she is not bound, by the law of the land, to answer them, or any of them.

"Her answer contains no denial of the allegations in the bill, in regard to the detriment and injury that will ensue to the complainants, or the special wrong and injury they will sustain by reason of the occupation of the said premises, for the purpose alleged, by depriving them severally of the comfortable enjoyment of the property, and that it will, in consequence of such use and occupation, be greatly depreciated and lessened in value, nor of the allegation that they have no adequate remedy at law.

"After the defendant filed her answer the complainants examined several witnesses in reference to the allegations in their bill, under a commission ordered in pursuance of the act of 1835, ch. 380, and their testimony is amongst the proceedings. The motion to dissolve the injunction issued has been heard upon bill, answer, and the said testimony. Upon this hearing the allegations in the bill, not denied by the answer, must be taken to be true, at least, such as she was bound to answer. Upon an examination of the averments in the bill, in connection with the denials in the answer, I find that these facts may be assumed, some of them being admitted, some conclusively proved, and some sufficiently proved to be stated as facts in the consideration of this motion, viz., that the defendant has purchased the house No. 51, Frederick street, and intends to occupy it; that the complainant, Haslup, owns the adjoining house, and lives in it with his wife and three daughters, aged, respectively, fourteen, sixteen and eighteen years; that the complainant, Whitridge, lives on Gay street, on a lot extending back to Frederick street, opposite to the defendant's house, and that her house is in view of the two back windows of the second and third stories of his house; and that he also owns a

dwelling house, occupied by a tenant, on Frederick street, directly opposite to the defendant's; that the other complainants own houses near, and carry on their trades, respectively, in these houses; that the defendant keeps a house of ill-fame, and intends moving into this house and using it for the purposes of prostitution; (this, I think, sufficiently appears from the fact shown by the records of the criminal court of Baltimore city, that she was convicted for keeping a bawdy-house on the 22nd of June 1855, and again on the 12th day of November 1855, on both occasions upon her own confession of guilt, taken in connection with the statements recently made by her, in her conversation with the witness, Michael E. Myers, as detailed by him;) that if she occupies this house for the purposes charged, the complainants will be specially wronged and injured; that they will be severally deprived of the comfortable enjoyment of their property, and that it will be greatly depreciated and lessened in value; (the allegations in the bill, in regard to these mischiefs and injuries, not having been denied by the defendant in her answer, the complainants are entitled to assume them as facts;) and that they have no adequate remedy at law.

"The keeping of a bawdy-house is confessedly a public nuisance. The law abhors the offence to good morals which such an occupation encourages, and spurns every contract whose consideration looks to the indulgence or accommodation of the vice involved in it. It punishes, by indictment, the landlord who rents his premises for such a purpose, and the keepers of such houses are constantly arraigned in the criminal courts of the State and condemned for the act. This defendant, then, intending to create or establish a public nuisance indictable as a criminal offence, at the place designated in the bill of the complainant, has this court the power, by injunction, to restrain her from so doing? *Story* in the 2nd *Vol.* of his *Eq. Jurisprudence sec.* 924, says: 'Courts of equity interfere to restrain and prevent such nuisances which are threatened or in progress, not only upon the information of the attorney general, but also upon the application of private parties directly affected by the nuisance;' and in *sec.* 924, *(a,)* or 'when

private individuals suffer an injury quite distinct from that of the public in general, in consequence of a public nuisance, they will be entitled to an injunction and relief in equity.' The law, as thus stated, is firmly settled by numerous English and American authorities. 9 *Eng. Law & Eq. Rep.*, 104, *Soltau vs. DeHeld.* 8 *Sim.*, 193, *Spencer vs. London & Bir. Railway Co. Ibid.*, 272, *Sampson vs. Smith.* 12 *Pet.*, 91, *City of Georgetown vs. Alexandria Canal Co.* 20 *Conn.*, 120, *Frink vs. Lawrence.* 14 *Do.*, 577, *Bigelow vs. Hartford Bridge Co.* 4 *H. & McH.*, 540. *Harrison vs. Sterrett.* 8 *G. & J.*, 479, *Delaware & Md. Rail Road Co. vs. Stump.*

"Such being the rights of individuals to the interposition of a court of equity, to restrain a public nuisance from which they suffer a special injury, the next inquiry is, do these complainants sustain such damage and injury, from this nuisance, as entitles them to the relief they pray for? Their uncontradicted allegations, in regard to damage, which are to be taken as true to their full extent, show that they will be severally deprived of the comfortable enjoyment of their property, and that it will be greatly depreciated and lessened in value, to their great detriment and injury. In the judgment of this court this is such a degree of damage and injury as meets the requirements of the decisions, in cases which the courts have granted such relief as these complainants ask for. It is insisted, however, that they have not alleged and proved any such damage or injury to be sustained by them, as meets the demand of the rule established in those cases; that such damage must be irreparable, and that depreciation in the value of their property is insufficient. I have carefully examined the cases in which courts of equity have restrained *public nuisances*, upon the application of *individuals* sustaining *special damage therefrom*, and find that they furnish no authority for the position, that they are not entitled to relief, unless the damage to them, from public nuisances, be irreparable. In some of these cases the attention of the court has been specially drawn to the distinction between irreparable damage and damage of an inferior degree, and in view of this suggestion they have not deemed it proper to countenance or establish the rule contended for in behalf of

the defendant.　In the case of *Bigelow vs. Hartford Bridge Co.,* 14 *Conn.,* 565, which was an application for an injunction against the Bridge Company to restrain certain acts it was about committing, the point was made, 'that an injunction will not be granted against the company, unless the injury is irreparable; a mere diminution of the value of property by a nuisance, without irreparable mischief, will not furnish any foundation for the relief sought,' (page 577.)　The judge in deciding upon the application says, that the bill cannot be sustained merely on the ground that the contemplated acts of the Bridge Company will constitute a *public nuisance,* nor 'unless it shows that the plaintiff will sustain a *special* or *peculiar damage from it,* an injury distinct from that done to the public at large,' (page 578.)　And upon the question, whether the plaintiff has shown that there is such a particular and special injury, which he has reason to apprehend from the acts contemplated, that he was entitled to an injunction? the judge by no means adopts the rule of irreparable damage, but says it is necessary, in order to lay the foundation for this remedy, that the injury shall 'be *substantial* and not merely a technical or inconsequential injury; there must be such a violation of the plaintiff's rights as will be attended with *actual* and *serious damage,*' (page 580.)　The injunction in that case was not granted, for the reason, as 'the court say, that the decay and depreciation of the property, and the inconvenience which will ensue to the plaintiff are found to be '*very small,* and not such as will *lessen materially the intrinsic value of the plaintiff's property,*' (page 581.)　In the case of *Frink vs. Lawrence,* 20 *Conn.,* 118, there was an application for an injunction to restrain a public nuisance from which special injury would result to the complainant.　He did not allege irreparable damage in his bill, but it appeared that the act complained of would '*seriously impair the value of his property,*' (page 119.)　The court say: 'We have had occasion, in several recent cases, to consider the question, whether a private individual can sustain a bill in equity, for an injunction against a public nuisance. And we held, that if the party complaining will sustain a *special* or *peculiar damage,* distinct from that done to the public

at large, the relief would be granted.    Indeed *such now seems*
to be the *well established rule in equity*, especially where the
object is to prevent some irreparable injury.'    But the court,
so far from restricting the relief to such cases, advised the Su-
perior Court to grant the prayer of the bill and decree a per-
petual injunction, and this is a case in which there was no al-
legation or proof of irreparable damage.    So in the case of *The
City of Georgetown vs. The Alexandria Canal Co.,* 12 *Pet.*,
91, the Supreme Court of the United States, after assuming
the law to be settled as to the rights of private individuals to
the remedy, by way of injunction, against public nuisances
when they aver and prove special injury, say, 'the complain-
ants then must, to maintain their position in a court of equity,
for relief against a public nuisance, have averred and proved
that they were the *owners of property liable to be affected by
the nuisance*, and that in point of fact *were so affected*, so as
that they thereby had *suffered a special damage*,' (page 99.)    It
is perfectly manifest from this, and from other passages in the
opinion of the court, that they did not deem it necessary for
the complainant, in such case, to charge and prove irreparable
damage to entitle him to an injunction.    The cases of *Spencer
vs. The London & Birmingham Railway Co.,* 8 *Simons,*
193, and of *Sampson vs. Smith, Ibid.,* 272, both leading cases
on this subject, was each a case of a bill filed for an injunction
to restrain a public nuisance, on the ground of special damage,
to private individuals.    Neither of the bills alleged irreparable
damage.    The defendants demurred in each case on the ground
that the nuisance was a public one, and, therefore, the relief
prayed ought to have been sought by information and not by
bill, but the demurrer was overruled in both cases, the vice
chancellor deciding, in substance, that where certain indivi-
duals suffer an injury from a public nuisance quite distinct
from that done to the public at large, the court will entertain
a bill by them to be relieved from the nuisance, but not at all
regarding it indispensable that the injury should be irreparable.
In *Peck vs. Elder,* 3 *Sandford's Superior Court Rep.,* 126,
the bill was filed by private individuals to restrain a public
nuisance, alleging that it would materially injure and impair

the value of their property. The chancellor said, 'it is *sufficient* that the *nuisance is calculated directly to diminish its value* by *preventing* its being *occupied* by the *complainant,* or by *good tenants who are able and willing to pay the rent,* or to destroy the value of the property as building lots,' (page 129, note,) and decided that the injunction must be continued until the hearing. This case was afterwards brought before the Superior Court, and it declared that a perpetual injunction must issue. The case of *Corning & others vs. Lowerre,* 6 *John's Ch. Rep.,* 439, was a bill to restrain a public nuisance, averring that it would cause 'great injury to the plaintiff,' as owners of certain lots. Chancellor Kent granted the injunction, saying, 'here was a special grievance to the plaintiffs, *affecting the enjoyment of their property* and the *value of it.* The obstruction was not only a common or public nuisance, but *worked a special injury to the plaintiffs.'*

"The above authorities demonstrate conclusively that the position assumed by the defendant, in reference to the degree of damage to be alleged and proved, to entitle the complainant to relief, cannot be maintained, and they also show clearly what the courts have regarded as the true rule upon this subject, viz: that the injury should be substantial, and attended with actual, serious damage, such as will materially lessen the intrinsic value of the property, or as the chancellor said, in *Peck vs. Elder,* such as is calculated directly to diminish its value by preventing its being occupied by the complainants, or by good tenants, who are willing and able to pay the rent; or, in the words of Chancellor Kent, affecting the enjoyment of the property, and the value of it. In addition to the cases above referred to, there is one that recently came before the English court of chancery, and is reported in 9 *Eng. Law & Eq. Rep.,* 104, in which the principal questions in this case were thoroughly argued at the bar, and so elaborately discussed and clearly settled by the learned vice-chancellor, as to show that in the English courts they would be no longer regarded as debatable. The object of the bill, in that case, was to restrain the ringing and tolling of bells in a chapel adjoining and contiguous to the dwelling of the complainant. It com-

plained of this ringing as a great nuisance to the complainant and his neighbors, and the inhabitants of the parish, and it charged, that if the ringing of the bells, as they were then tolled and rang, was continued, it would considerably diminish the value of the plaintiff's house, and he should be obliged to leave it, and would have great difficulty in disposing of it, except at considerable pecuniary sacrifice. And the proof in the case showed that this would be the effect. There was a demurrer to the bill, on the ground of want of equity in the bill. The 1st ground of demurrer, as stated by the vice-chancellor, (page 111,) was 'that it was a public nuisance, and that it was not competent for the plaintiff to file a bill as for a private nuisance.' He then proceeds upon the assumption that it was a public nuisance, and reviews all the authorities upon the subject, in all of which, he says, 'it has been held, and acted on over and over again, that if an individual suffers a special and particular damage from an act, he may have the interference of a court on a bill, although the act complained of, be a public nuisance. In commenting upon the objection urged in that case, as in this, against the issuing of the injunction, he says: 'It is said that part of what is alleged by the plaintiff as the mischief arising to him, is the diminution of the value of his house. But although it is perfectly true the mere diminution of value does not *per se* constitute a nuisance, surely the extent of the nuisance, if it be a nuisance, may be materially shown by this, that so great is the annoyance that no respectable person, that is, no person who is able to live in such a house as this, would take it with such a nuisance, and the only person who could be expected to take it, would be one who would bear with the nuisance for the sake of the smaller rent which he paid. I say in that way diminution in value is of great moment,' (page 123.) 'Under these circumstances,' the vice-chancellor says, 'The question which I have to ask myself is this,' (and he put it in the language of Lord Justice Knight Bruce, in *Walter vs. Selfe,*) 'ought this inconvenience to be considered, in fact, as more than fanciful, or as one of mere delicacy and fastidiousness, or as an inconvenience materially interfering with the ordinary comfort, physically, of

human existence? That, I think, enunciates distinctly the question which is to be tried on such an occasion as this, and I must add, in the very words in which Vice-chancellor Bruce goes on there: and I am of opinion that this point is against the defendant; that this is such an inconvenience, such an invasion of the domestic comfort, and invasion of a man's house, that he is entitled to come and ask this court to interfere. And upon that point, I would just refer to the language of Lord Eldon, in the case of *The Attorney General vs. Nichol.* He says, the foundation of this jurisdiction, that is, interfering by injunction, is that head of mischief alluded to by Lord Hardwicke, that sort of material injury to the comfort of the existence of those who dwell in the neighboring house, requiring the application of a power to prevent, as well as remedy, an evil for which damages, more or less, would be given in an action at law. That (says the vice-chancellor) is the ground for interference by injunction, and that is the ground upon which I conceive that I ought to grant an injunction in this case, which he accordingly ordered; and that in a case in which he assumed the nuisance complained of to be a public nuisance, and in which the bill neither alleged nor the proof showed any irreparable damage, and in which, in rebutting the objection that the complainant relied merely on depreciation in the value of his property, he defines what the courts regard as depreciating and impairing the value of property by a nuisance, so as to entitle parties to relief by injunction, in such terms as to embrace and extend to the very kind of damage and injury alleged and shown in this case.

"This court cannot, without utterly disregarding the principles and positions established in these cases, refuse to the complainants the relief they ask. They show a public nuisance of the most offensive character, about to be established, adjoining and contiguous to their respective houses. They show, further, all that courts in such cases require complainants to show, to entitle them to an injunction, that they will be severally deprived of the comfortable enjoyment of their property, and that it will be greatly depreciated and lessened in value, if the defendant is permitted to set up this nuisance. Their

right to the interposition of the court seems to follow, as a matter of course.

"It will be found, upon a careful examination, that the decisions referred to on behalf of the defendant, to sustain the position that these complainants cannot have relief, without showing irreparable damage, apply to cases of private nuisance, (2 *Story's Eq.*, sec. 925,) and I do not think that the rule is settled, even in regard to nuisances of that description, unless it be taken in the terms used by *Story*, in his *Equity Jurisprudence*, 2 *vol.*, sec. 926, in reference to private nuisances, where 'the injury is material, and operates daily to destroy or diminish the comfort and use of the neighboring house, and the remedy, by a multiplicity of actions for the continuance of it, would furnish no substantial compensation.'

"But it is insisted by the solicitor for the defendant, that, conceding there are sufficient facts alleged and proved in this case, to entitle the complainants to the injunction prayed, if the nuisance of which they complain, were one offensive to the physical senses, yet inasmuch as this alleged nuisance is of such a character as to offend only the moral senses, the court will not interfere, and that for the reason that this court does not exercise the functions of a moral censor, or set itself up to protect the morals of the community; and that if it assumed the exercise of such powers, it would be compelled to go the length of interfering in behalf of persons of fastidious sensibilities, against neighbors whose habits or conduct might be grossly immoral and shocking to persons of virtuous sentiments, powers which it would be absurd to claim for the court. But it is not necessary for this court to vindicate its power to issue the injunction prayed for, by claiming to have the morals of the community under its care. It is sufficient for it to say that the *pecuniary interests* and *property* of the citizen are committed to its charge, and that under certain circumstances it must interfere to protect them from damage. The ground on which it interferes in this case, is not that this defendant, or those around her, or even her establishment, is offensive to the *moral senses* of the *complainants*, but that the *business* and *occupation which she intends to follow*, has been con-

*demned* by the courts as an *illegitimate employment*, and a *public nuisance*, and is punished as such, and that by establishing this nuisance alongside of *their property*, they *will be severally deprived* of the *comfortable enjoyment of it*, and *·it will be greatly depreciated and lessened in value*. Nor is the. action of this court directed against the defendant as an *immoral* or *vicious neighbor* simply, but as an individual *conducting* an *offensive business*, regarded by the law as a *nuisance*, and interfering with the enjoyment, and impairing the value of their property. 1 can. discover no authority, whatever, for the distinction relied upon in this case, between nuisances offensive to the physical senses, against which the court will grant relief, and such as are offensive to the moral senses only, against which they will not interfere. So far from this being the case, I find that the standard elementary writers, in enunciating the classes of public nuisances in which the courts interfere, mention this very description of nuisance by name. 2 *Wart. Eden on Injunctions*, 264, *note* 3. *Willard's Eq. Jurisprudence*, 390.

"But it is insisted, on behalf of the defendant, that if this last position must be rejected, there is still another which would preclude the complainants from relief, which is, that they have all united in one bill, complaining of special and several injury to each, and praying relief accordingly, and that for this reason the bill must be dismissed. This objection is not new, but has been seriously urged in other cases of this description. In the case of *Murray & Blount, vs. Hay,* 1 *Barb. Ch. Rep.,* 59, where several parties had united, complaining of special injury to each, from a public nuisance, it was relied upon by the defendant, but *Chancellor Walworth,* after reviewing all the previous decisions, both English and American, touching the point, and giving to them the fullest consideration, decides that the ·objection is not valid, and does not debar the complainants from such relief as is prayed in this bill, framed as it is. The same point, the chancellor says, was previously decided by Chancellor Sandford, in the case of *Reid and others, vs. Gifford, Hopkin's Ch. Rep.,* 416.

"For the foregoing reasons, I must continue the injunction heretofore granted in this case, until final hearing."

From the order so continuing the injunction, the defendant appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON and TUCK, J.

*Chas. J. M. Gwinn* for the appellant:

The court below was in error, because it passed this order in the absence of any testimony in the case to show that the defendant did intend to use the house as a house of ill-fame. The court, in its opinion, admits that such evidence was necessary, but assumes that it was supplied by the failure of the defendant to answer the allegations of the bill, which charged that she was keeping, at the time of the purchase of the house, a house of ill-fame, and especially by her failure to deny that she intended occupying the house in Frederick street for that purpose. The defendant was not bound to criminate herself by her answer to the allegation of her existing occupation, (2 *H. & J.*, 487, *Singery vs. Attorney General; 3 Bland*, 125, *Salmon vs. Clagett,*) and her refusal or neglect to answer the allegation that she intended to occupy the house purchased as a house of ill-fame, cannot be construed into an admission of the fact. 2 *H. & J.*, 301, *Hopkins vs. Stump*. 1 *G. & J.*, 503, *Warfield vs. Gambrill*. The true course of the complainants, if they were dissatisfied with this answer, was to have excepted to it, and if the court had ruled it insufficient, it would have been no answer, and the defendant would have been in contempt, which could have been purged only by a further answer. The court, therefore, plainly erred in its order, for it is founded upon a presumption of testimony where there does not exist any testimony in the case.

The court erred in admitting that testimony which has been excepted to. Evidence of reputation must be founded upon the opinion of the public, or, at least, of the neighborhood, and no less basis can suffice. And it was still more inadmissible to permit evidence of a conviction for a past offence to stand

as proof of a present occupation. The presumption of the law being, as far as any presumption can be raised, that the sentence of the law had deterred the offender.

Assuming that the court was right in its assumption that the house was to be used as a house of ill-fame, it does not seem that there was any right to issue the injunction at the suit of private parties. There did exist a full remedy at law in the name of the commonwealth, for the evil, not only for its punishment, but for its abatement, for this may be a part of the judgment and remedy on such judgment. 3 *Wart. Arch.,* 204, 238. And this is not of that species of public nuisance, in which a resort to private remedy is contemplated, because it is not one from which any *physical* damage results, or which interferes with the *physical* enjoyment of the comfort of the tenements of the complainants. Every case cited by the complainants, or referred to by the court below, in its opinion, hath this ingredient. And the absence of any case in the books, in which this remedy has been sought to be enforced in such a case, is a strong presumptive argument against the exercise of the power. If it is a good exercise of it, an eaves-dropper and a common scold can be enjoined from moving into any house they have purchased, for these are common nuisances, (4 *Bl. Com.,* 168,) and the disposition is more inseparable from the identity of the person than any occupation can be. The true rules seem to be: 1st. That equity, in case of a public nuisance, will enjoin where the nuisance works a direct *physical* injury to the property, or to the comfort of the occupant. 2nd. Where the nuisance consists in the violation of public morality, as recognized by law, the remedy to the person aggrieved by the proximity of the evil to himself, is found in the abatement of the nuisance which the court may order in its judgment, upon the indictment for such nuisance.

The law in Maryland cannot be strained beyond these principles, and, as yet declared, it does not even reach thus far. In this State the remedy, so far as a private right is concerned, only arises where a special injury has been inflicted. 8 *G. & J.,* 510, *Delaware & Md. Rail Road Co. vs. Stump.* And this injury must be irreparable. 4 *Gill,* 38, *Hamilton vs. Ely.*

8 *Gill*, 433, *Richardson vs. Mayor & C. C. of Balto.* 1 *Md. Rep.*, 543, *White vs. Flannigain.* 3 *Md. Rep.*, 489, *Ches. & Ohio Canal Co. vs. Young.* 7 *Md. Rep.*, 416, *Shipley vs. Ritter.* These cases follow the case of *Attorney General vs. Nichol.*, 16 *Ves.*, 342, and *Wynstanley vs. Lee*, 2 *Swans.*, 336. See, also, as to the principle that a court of equity is not *custos morum*, 2 *Story's Eq.*, secs. 936, 945.

No counsel appeared for the appellees.

TUCK, J., delivered the opinion of this court.

The injunction in this case was granted upon a bill stating that the appellees are owners of property in the city of Baltimore, in the immediate vicinity of a house which the appellant had purchased, and to which she intended to remove, for the purpose of keeping a house of ill-fame, in which business she had been for a long time, and was then engaged. The bill charges, also, that in addition to the wrong and injury inflicted upon them, in common with other citizens of that city, by the occupation of the premises for the unlawful and immoral purpose complained of, "the complainants will be especially wronged and injured, inasmuch as they will be severally deprived of the comfortable enjoyment of their property, and that it will be greatly depreciated and lessened in value, by the close proximity of their said property to the premises in which it is charged that the defendant is about to open a bawdy-house." The defendant, by her answer, admits the averments of residence and ownership of property by the complainants, setting forth particularly their relative situation to the house she had purchased; but declines to answer the averments that she had previously kept a bawdy-house, and intended to keep one at the house mentioned in the bill.

The case comes before us on appeal by the defendant from an order continuing the injunction, passed on motion to dissolve, and a hearing on bill, answer and affidavits, under the act of 1835, ch. 380. In this stage of the cause, if the bill shows a case entitling the parties to the injunction, it will not be dissolved, if the equity is not denied by the answer. *Hardy*

*vs. Summers*, 10 *G. & J.*, 316. *Hutchins vs. Hope*, 12 *G. & J.*, 256. This rule of practice is an answer to the objection taken on the part of the appellant, that the judge below had passed the order appealed from in the absence of evidence that she was, at the time of filing the bill, the keeper of a bawdy-house, and intended to pursue that business at her new residence. But we think that the case authorizes the conclusion, as a matter of fact, that the appellant purchased and was fitting up this house for the offensive purpose stated in the bill. As late as November 1855, she had been convicted, on her own confession, of having been so employed, and two previous convictions had been obtained, in the same manner, in the years 1854 and 1855. Between the last of these convictions and the month of April 1856, when the bill was filed, not one circumstance is shown from which we can infer that she had changed her course of life. On the contrary, the inference is most strongly rebutted by her conversation with one of the witnesses, when she was having the house repaired. This view of the case derives strength from her refusal to answer the allegations of the bill on this point. Touching, as it did, her reputation, she would doubtless have denied the fact alleged, if it had been false. By her silence, or refusal to answer, we think she subjects herself to the remarks of the late Chancellor Bland, in 3 *Bland*, 132, "that a defendant who manifestly omits to answer, or answers evasively any substantial part of the bill, who evidently and purposely holds back something, cannot complain if he should find himself regarded with suspicion and distrust, and be refused that to which he may, in truth, be entitled, and, under other appearances, might have obtained." So, in *Bentley vs. Cowman*, 6 *G. & J.*, 155, it is said, "Pleadings in equity are founded in the purest principles of ethics, and marked by frankness and fair dealing." It is no answer to say that the defendant was not obliged to criminate herself, for, conceding that this would have relieved her from answering the allegation that she was then carrying on that business, it is very clear that she would not have subjected herself to a prosecution, by denying that she had purchased this house with a view to con-

tinue it there. We are constrained, therefore, to consider the appellant as a person about to open the premises as a house of ill-fame, and the prominent question for decision is, whether the jurisdiction of courts of equity embraces the prohibition of such public nuisances, where the complaint is, that they will, by reason of their close proximity, deprive other persons of the comfortable enjoyment of their property, and greatly depreciate and lessen its value.

As was observed by the appellant's counsel, no decision has been found in which the power was exercised in such cases as the present. Nor is there any in which the writ of injunction has been applied for and denied. But the absence of precedents, though not to be overlooked entirely, does not, of itself, determine questions of jurisdiction. We consult adjudged cases to ascertain their reason and spirit. These are the foundation of the law. 3 *Bland,* 133. *Fisher vs. Prince,* 3 *Burr.,* 1364. *Rust vs. Cooper, Cowp.,* 632. Courts are not to assume jurisdiction, but they may amplify remedies, and apply rules and general principles for the advancement of substantial justice. *Broom's Maxims,* 36. 50 *Law Lib.,* 50. *Russell vs. Smyth,* 9 *Mees. & Wels.,* 818, *per Ld. Abinger.* If this were not so, and courts were confined to particular precedents, there would be no power to grant relief in new cases constantly occurring. And, hence, when they do arise, and rights can be asserted, or wrongs prevented or redressed, consistently with established principles, it would be a great failure of justice to deny relief, merely because no decision could be found in which the jurisdiction had been invoked and exercised. The point on this appeal, then, is not whether an injunction has ever issued to prevent the establishment of a public nuisance of this kind, but whether the doctrines of equity, applicable to nuisances, should be applied to the present case.

Although at law, the remedy in respect to public nuisances is by indictment, and in respect to private ones, by action at the instance of the person injured, yet, in the common law tribunals, redress may be had for damage resulting from public as well as private nuisances. These remedies can only abate

or afford compensation for an existing nuisance, and are ineffectual to restrain or prevent such as are threatened or in progress.   Hence there is a jurisdiction in equity to enjoin, whenever the nature of the injury is such that it cannot be adequately compensated by damages, or from its continuance or permanent mischief, will occasion a constantly recurring grievance. And as a party injured by a public nuisance may have his action at law for damages thereby sustained, so he may apply for an injunction to prevent such nuisance, if its existence will cause a substantial prejudice to his property, or the reasonable enjoyment thereof.   *Drewry on Injunctions*, 240.   36 *Law Lib.*, 165.   *Adams' Equity*, 210.   68 *Law Lib.*, 185.   2 *Story's Eq.*, sec. 920 to 926.   *Jeremy's Equity*, 309, 310. This author says: "The foundation of this court's jurisdiction on the subject of nuisance, is the probability of irreparable mischief; that sort of material injury by one to the comfort of another, which requires the application of a power to prevent, as well as to remedy, the evil."

We need not review here the cases on which these writers rely.   They generally sustain the doctrine as laid down by them.   Formerly the jurisdiction was more restricted than at present; but, for many years, both in England and in this country, this process has been more extensively employed, as the exigencies of society created a necessity for its use, according to recognized doctrines of equity.   The English decisions were examined by the vice-chancellor, in *Soltau vs. DeHeld,* 9 *Eng. Law & Eq.*, 104, upon the authority of which, he considered himself warranted in applying the remedy in restraint of ringing church bells, "so as to occasion any nuisance, disturbance, or annoyance to the plaintiff, and his family residing in his house," upon the ground that a private person may bring his bill in equity, where he apprehends injury or disturbance in the enjoyment of his property from a public nuisance.

In this country, too, there are decisions full to the point. We mention, particularly, *Corning vs. Lowerre,* 6 *Johns. Ch. Rep.*, 439, recognized in 12 *Peters,* 91, where Chancellor Kent allowed the writ, "inasmuch as there was a special

grievance to the plaintiffs, affecting the enjoyment of their property, and the value of it. The obstruction was not only a common or public nuisance, but worked a *special* injury to the plaintiffs." The Supreme Court, in 12 *Peters*, 91, said, that "a court of equity, pursuing the analogy of the law, that a party may maintain a private action for special damage, even in case of a public nuisance, will now take jurisdiction in case of a public nuisance, at the instance of a private person, where he is in imminent danger of suffering a special injury, for which, under the circumstances of the case, the law would not afford an adequate remedy." This principle appears to have been acted upon in this State; for in the case of *Harrison vs. Sterett*, 4 *H. & McH.*, 540, a claim for damage resulting from a public nuisance, was sustained at law; and in *The Del. & Md. R. R. Co. vs. Stump*, 8 *G. & J.*, 479, the jurisdiction of courts of equity in such cases was recognized, but not en-forced, because the bill did not state a case of private grievance.

But the appellant's counsel suggested that a distinction should be taken between the cases relied on in support of this power and the present, because here the object is to prevent what is offensive to the moral senses. We need not inquire how far this jurisdiction can be defended on grounds of morality, and to preserve the decencies of life from gross violation. The case does not require this. But it would be strange, indeed, if when the court's powers are invoked for the protection and enjoyment of property, and may be rightfully exercised for that purpose, its arm should be paralyzed by the mere circum-stance that, in the exercise of this jurisdiction, it might inci-dentally be performing the functions of a moral censor, by suppressing a shocking vice denounced by the law, and amen-able to its penalties from the earliest times. And if, as the authorities show, the court may interfere where the physical senses are offended, the comfort of life destroyed, or health impaired, these alone being the basis of the jurisdiction, the present complainants, presenting as they do a case otherwise entitling them to relief, should not be disappointed merely be-cause the effect of the process will be to protect their families

from the moral taint of such an establishment as the appellant proposes to open in their immediate vicinity.

The objection of multifariousness as to parties, was made at the hearing, and not by demurrer, which is the usual practice. When raised at the hearing, it is not always fatal, but will be allowed at the discretion of the court. *Story's Eq. Pl.*, secs. 271, 284, *a.* 530, 540, 541. One ground for such objections is, that the defendant might be required to unite in one answer defences not applicable to all the complainants, thereby presenting various issues in the same cause, and involving the defendant in unnecessary litigation and expense. Where, however, the court can perceive that the reason of the rule does not apply, and the objection is not made by demurrer, it ought not to interfere *sua sponte*. Here the objection has been waived by the answer, which takes defence as to all the complainants, and under it, the real point in controversy can be determined as well as if there were as many suits as there are plaintiffs. Therefore, without deciding whether the bill be demurrable or not, we are of opinion that the point was properly ruled against the appellant.

*Order affirmed, and cause remanded.*