CASE 67—PETITION EQUITY—APRIL 27.

# Neaf v. Palmer, Etc.

APPEAL FROM M'CRACKEN CIRCUIT COURT.

1. INJUNCTION TO PREVENT CRIME—REMEDY.—An injunction is not the proper remedy to suppress the keeping of a bawdy house; the processes of the criminal courts are adequate for that purpose.

CAMPBELL & CAMPBELL FOR APPELLANT.

1. Equity will not interpose for the prevention of crime, or to enforce moral obligations. Spelling on Extraordinary Relief, vol. 1, secs. 24, 394, 396, 385; Attorney General v. Insurance Co., 2 Johnson's Chy., 371; Anderson v. Doty, 33 Hun., 160, (48 Amer. Rep., 276; Stetson v. Faxon, 19 Pick., 147, (31 Amer. Dec., 123); Wood on Nuisances, 4; Bryant v. Fall River, 113 Mass., 219 (18 Amer.

Rep., 470); Blackwell v. Old Colony Co., 122 Mass., 3; 1 Story's Equity, title Nuisance, Injunctions.

W. G. BULLITT ON SAME SIDE.

1. The appellant has been in effect convicted without a trial by jury. Bill of Rights, secs. 7 and 11.
2. The remedy furnished by the penal laws is ample to suppress nuisances. Bollinger v. Commonwealth, 17 Ky. Law Rep., 1122.

CHAS. K. WHEELER FOR APPELLEES.

1. The appellant has been repeatedly fined for keeping bawdy house, but this does not abate the nuisance; under these circumstances, a chancellor has the power to enjoin its continuance where property rights are involved. Hamilton v. Whittredge, 11 Md., 128.

JUDGE HAZELRIGG DELIVERED THE OPINION OF THE COURT.

It is agreed that the appellant keeps a bawdy house on a certain street in Paducah, and that its presence there is shocking to the moral sense of the community, and is especially obnoxious and disagreeable to the immediate neighborhood.

The proof also conduces to show that the maintenance of such a house unfavorably affects the salable value of property in its locality.

The question is, may the chancellor, under the circumstances, enjoin the appellant from using the house in question as a bawdy house?

The chancellor below answered this question in the affirmative, and at the instance of certain real estate owners in the neighborhood, entered this order of perpetual injunction appealed from.

At the threshold it is noticeable that this is the first time in the jurisprudence of the State that the attempt

[ 32 ]

has been made to suppress this evil by the substitution of the chancellor's orders in lieu of the processes of the criminal courts. This can not be, because new conditions have arisen calling for the ever expanding powers of the chancellor. The bawd we have always had with us, and the bawdy house.

The absence of the exercise of such a power may not be conclusive against its use; but it is at least strongly persuasive that such power does not exist.

It is not alleged that there are offensive sights or sounds about the obnoxious premises, but only that property is made less valuable in the vicinity, and that the moral atmosphere is tainted and pestilential.

The injury is wholly consequential. It seems to us under these circumstances, the criminal courts had best be left to enforce the criminal laws. These are confessedly entirely adequate for the purpose of suppressing such evils.

To keep a bawdy house is to erect and maintain a nuisance, and is in itself a crime. The suppression of the nuisance, therefore, is but the infliction of a punishment for the crime. The one is inseparable from the other. The chancellor would therefore be in effect punishing the criminal by the civil process of injunction.

In Anderson v. Doty, 33 Hun., 160, where this precise question was involved, the court held that courts of equity were not the proper tribunals in which to suppress the evil of keeping bawdy houses, that the usual and customary means, and those always theretofore employed, were set in motion by the courts which administer the

criminal law, whose machinery was sufficient to give the community full relief. The only opposing authority is the case of Hamilton v. Whitridge, 11 Md., 128, which we can not follow, as we conceive, without doing violence to the long established practice in this State of relegating the enforcement of any laws against crime to the criminal courts.

We are constrained, therefore, to take a different view of this question from the chancellor, and his judgment is reversed to the end that this petition for injunction be dismissed.