CASE 35—INDICTMENT FOR MAINTAINING A NUISANCE—MARCH 13.

# Cawein v. Commonwealth.

110   273
f131   684

APPEAL FROM KENTON CIRCUIT COURT.

JUDGMENT OF CONVICTION AND DEFENDANT APPEALS.   REVERSED.

CRIMINAL LAW—FORMER CONVICTION—CONTINUOUS NUISANCE—KEEPING POOL ROOM.

Held:   Where a pool room for betting on horse races was never vacant during several months, a watchman being left in charge each night, the nuisance thus maintained was a continuous offense; and a conviction under an indictment charging the nuisance to have been maintained at any time during that period is a bar to another prosecution for the same offense, though alleged to have been committed at a different time during the same period, provided that time was prior to the former indictment, as time was not a material ingredient in the offense, and the defendant might have been punished under the first indictment for the whole time he had kept the house prior to that indictment.

JOHN L. RICH, ATTORNEY FOR APPELLANT.

The grand jury of Kenton county, Ky., on July 13, 1898, returned four separate indictments against the appellant, charging in each indictment that the defendant was guilty of maintaining and continuing a common nuisance on Second and Court avenue in the city of Covington.   The indictments are Nos. 655, 656, 657 and 658.   The time included in the four indictments is from March 21, 1898, up to, and including, July 11, 1898, a period of 112 days.

Indictment 656 charges the defendant with maintaining the nuisance from March 31, 1898, to April 30, 1898.   No. 657 from April 30, 1898, to May 31, 1898.   No. 658 from May 31, 1898, to June 30, 1898.   No. 655 from June 30, 1898, to July 11, 1898.

On November 22, 1898, appellant was tried under indictment No. 655, convicted and paid his fine.   Upon the trial of this case the appellant, when arraigned, filed a plea in bar, setting out all these indictments and pleaded his conviction in one of them as a

Cawein v. Commonwealth.

bar to this one. The court after hearing the evidence sustained a demurrer to his plea in bar, and instructed the jury as set out in the bill of exceptions filed herein.

The question to be decided upon this appeal is whether a series of acts of the accused, which amount to a criminal occupation, can·be divided by the grand jury into arbitrary parts and each part be called a separate offense. In other words, can the accused be liable to successive prosecutions for maintaining a continuous nuisance, when that nuisance was founded upon a single impulse and was the result of a single act or intention. The appellant's contention is that all of his alleged acts prior to the institution of this prosecution constitute a single, and only one offense.

## AUTHORITIES CITED.

21 Ky. Law Rep., 140; Wharton's Criminal Law (9th ed.), vol. 1, secs. 27 and 931; Cin., R. R. Co. v. Com. of Ky., 80 Ky., 137; Ches. & Ohio R. R. Co. v. Com. of Ky., 88 Ky., 369; *Ex parte* Snow, 120 U. S., 274, or L. C. P. U. S. Sup. Ct. Rep., 659; State v. Lindley, 14 Ind., 431; U. S. v. Burch, 1 Cranch C. C., 36; Dixon v. Corporation of Washington, 1 Cranch, 114; Washburn v. McInroy, 7 John, 134; Mayor v. Ordreman, 12 Johns, 122; State v. Nutt, 28 Vt., 590; Sturgiss v. Spofford, 45 N. Y., 446; State v. Egglehst, 41 Iowa, 544; Com. v. Connors, 116 Mass., 135; Com. v. Robinson, 126 Mass., 259; 16 Ky. Law Rep., 395, Com. v. Bollinger.

D. A. GLENN AND ROBT. J. BRECKINRIDGE, ATTORNEY-GENERAL, FOR APPELLEE.

Counsel for appellant has stated fully and fairly all the facts occurring at the time of trial. This appeal ought to be considered in the nature of a petition for a rehearing of the case lately decided by this court of J. B. Respass v. Commonwealth, reported in 21 Ky. Law Rep., 140.

That case was in all respects, except the name of the person and place of location of the nuisance, the same as this. That judgment was reached after full consideration of a carefully prepared brief by counsel for appellant, covering the points raised in the case on trial, and no new facts or law have been cited that could cause a change in the law as therein laid down. It is argued by counsel for appellant that if this court sustains the judgment of the court below appellant will suffer a double conviction for the same day. Counsel omits to read the language of each indictment, wherein it charges *from* March 31 to April

30; *from* April 30 to May 31; *from* May 31 to June 30; *from* June 30 to July 11, excluding in each successive indictment the last day named in the next preceding one.

### AUTHORITIES CITED.

Respass v. Com., 21 Ky. Law Rep., 978; State v. Nutt, 28 Vt., 598; State v. Egglesht, 41 Iowa, 574; Sturgis v. Spofford, 45 N. Y., 446; Washburn v. McInery, 7 Johns, 134; Mayor v. Ordevenan, 12 Johns, 123.

OPINION OF THE COURT BY JUDGE HOBSON—REVERSING.

On July 13, 1898, the grand jury of Kenton county returned four indictments against appellant for the offense of maintaining and continuing a common nuisance. The first indictment charged that he did from March 31, 1898, to and including April 30, 1898, unlawfully suffer and permit divers and sundry persons, to the grand jury unknown, habitually to assemble in a certain house in Covington, known as "Sharp's Place," which was in his possession and control, and then and there engage in betting winning and losing money, on horse races. The second indictment charged the same offense committed from April 30, up to and including May 31, 1898; the third, from May 31, up to and including June 30, 1898; the fourth, from June 30 to July 13, 1898. The four indictments are precisely the same, except the dates between which the offense is alleged to have been committed. They cover a continuous period of 112 days—from March 31st to July 13th. Appellant was arraigned on the last indictment and pleaded not guilty. A trial was had. He was fined $75, and paid the judgment. He was then put on trial under the first indictment. He entered a plea of not guilty, and also pleaded his conviction under the other indictment in bar. The testimony was heard, and the court below at the conclusion of the evidence held the plea of former conviction not to be good. The jury returned a

verdict finding appellant guilty as charged, and fixing his punishment at a fine of $100. Judgment was entered upon the verdict, and this appeal is prosecuted on the ground that a conviction under one of the four indictments was a bar to a further prosecution under the others.

The evidence showed that appellant kept the place referred to in the indictments from some time in March, 1898, until after the indictments were found; that it was what is known as a "pool room," at which bets were made on horse races in different parts of the United States; that there were blackboards on the walls, on which the names of the horses, also the weights and jockeys, were entered; that the Western Union Telegraph Company ran a wire to the room, so as to give the results of the races as they were run, the operator calling out the news to the public as it was received from the race course, and giving the relative positions of the horses at different points on the course; that there was a ticket writer, who took bets, and a cashier, who cashed the tickets. The pooling commenced about 1 o'clock in the afternoon, and continued at times until 6 or 7, depending on the point where the races were run. From 75 to 150 people gathered there. The daily business amounted to from $1,200 to $1,500. There were from ten to fifteen employes in the establishment. About 8 o'clock in the morning one man put upon the board the entries for the day. Some betting was done in the morning. Six or eight of the employes came about 8 o'clock in the morning, the rest about 12. The crowd left about 7 o'clock. The cashier stayed to finish up his accounts. The room was then swept and scrubbed every night, and a watchman left in charge until morning. There were several desks and other furniture in the room, for use in the business, all of which were placed there for

the purpose of carrying on the business permanently. The
employes were employed in March, with no fixed time of
employment. For a time they were paid every three days,
but after that, for convenience, they were paid daily, so
that each day's business would show for itself. The
house was operated continuously in this way during the
whole time covered by the four indictments, without any
change in its furnishings or the mode of doing business.
It was never vacant, there being a man there every night,
and it was clearly intended as a continuous thing from
the time it was opened. No new impulse was subsequent-
ly given.

Under this evidence the keeping of the house was a
nuisance maintained uninterruptedly, and was plainly a
continuous offense from the time it was opened until the
finding of the indictments. The Commonwealth could not
arbitrarily split up a continuous offense, and make what
was done in April one offense, what was done in May a
second, what was done in June a third, and what was
done in July a fourth. If it could do this, it might fur-
ther have split the offense up, and made each week the
subject of a separate indictment, or followed any other
arbitrary division of the time. The rule of law
is elementary that a single cause of action can
not be split so as to be the subject of two
suits. Freeman Judgment, section 238. The rule in crim-
inal prosecutions is thus stated in Freeman Judgment,
section 225: "The conviction of an offense, like the re-
covery of judgment in a civil action, is a bar to any fur-
ther prosecution based on the same cause of complaint.
The question often arises whether the offense of which
one is accused is not a part of an offense of which he has
already been convicted, and, if so, whether the whole

crime is not merged in the former conviction; for the same offense can not be split into parts, and made to sustain two or more convictions of the same person." *In re* Snow, 120 U. S., 274, (7 Supreme Court, 556), (30 L. Ed., 658), three indictments were returned against the defendant under the act of Congress providing that, if a male person cohabits with more than one woman, he shall be deemed guilty of a misdemeanor. The indictments were just alike in all respects, except that each covered a different period of time. The first charged a continuous offense from the 1st day of January to the 31st day of December, 1883; the second charged the same offense with the same women from January 1, 1884, to December 31, 1884; the third, from January 1, 1885, to December 1, 1885. He was convicted under each of the indictments, and his punishment under each was fixed at a fine of $300 and imprisonment for six months. The conviction under one indictment was held a bar to a prosecution under the others. The court said: "The division of the two years and eleven months is wholly arbitrary. On the same principle there might have been an indictment covering each of the thirty-five months, with imprisonment for seventeen years and a half, and fines amounting to $10,500, or even an indictment covering every week, with imprisonment for seventy-four years, and fines amounting to $44,400, and so on, *ad infinitum*, for smaller periods of time. It is to prevent such an application of penal laws that the rule has obtained that a continuing offense of the character of the one in this case can be committed but once, for the purposes of indictment or prosecution, prior to the time the prosecution is instituted. Here each indictment charged unlawful cohabitation with the same seven women; all the indictments were found at the same time,

by the same grand jury, and on the testimony of the same
witnesses, covering a continuous period of thirty-five
months; and it was the mere will of the grand jury which
divided the time among three indictments, and stopped
short of dividing it among thirty-five, or one hundred and
fifty-two, or even more." In State v. Lindley, 14 Ind.,
430, the defendant was charged with keeping a gaming
house on July 27, 1858, and on divers other days before
that day. In bar of the prosecution he relied on a pre-
vious conviction for keeping the same house as a gaming
house from July 28, 1858, to November 27, 1858. The
court said: "Keeping a gaming house may be a continuous
act, and all the time during which a given house is con-
tinuously thus kept, prior and up to the prosecution for
the keeping, constitutes one indivisible offense, which can
be punished but in a single prosecution. Like a civil
cause of action, it can not be split up in the prosecution
of it. But one penalty can be assessed." So, in U. S. v.
Burch, 1 Cranch, C. C. 36, Fed. Cas. No. 14,683, it is said:
"The keeping of a disorderly house is a single offense, and
one conviction is a bar to a prosecution for keeping a
disorderly house at any time prior to the finding of the in-
dictment." In Freeman v. State, 119 Ind., 501, (21 N. E.,
1101), at the March term, 1889, the grand jury returned at
the same time two indictments against the defendant for
keeping a house of ill fame. The first charged the of-
fense to have been committed on January 9, 1889; the sec
ond, on February 11, 1889. The defendant was tried and
convicted under the second indictment. She was then
placed on trial under the first, and set up the former con-
viction. The proof showed that both the indictments were
for the continuous keeping of the same house. The plea
was held good. The court said: "The offense charged is

a continuing one. A conviction might have been obtained under either of the indictments by proof of the keeping of the house at any time prior to the finding and returning of the indictment, and not beyond the time fixed by the statute of limitation. The crime charged is the continuous keeping of the same house. The same proof was admissible under the one indictment as the other." Section 129 of our Criminal Code of Practice reads: "The statement in the indictment as to the time at which the offense was committed is not material, further than as a statement that it was committed before the time of finding the indictment, unless the time be a material ingredient in the offense." In Cincinnati R. Co. v. Commonwealth, 80 Ky., 137, the defendant was charged with a common nuisance committed on October 16, 1880. The court said: "The Commonwealth was not confined to the day alleged in the indictment, but had the right to prove the commission of the offense on any day within twelve months before the finding of the indictment." The same rule was followed in the subsequent case of Chesapeake & O. R. Co. v. Commonwealth, 88 Ky., 368; 10 R., 919 (11 S. W., 87). Time here was not a material ingredient in the offense. The indictments being all precisely the same, except as to the statement of the time at which the offense was committed, under any one of them the defendant might have been convicted and punished for the whole time that he had kept the house prior to the finding of the indictments. In Bish. Criminal Law, section 1053, the rule applicable in such cases is thus stated: "The test is whether, if what is set out in the second indictment had been proved under the first, there could have been a conviction. When there could, the second can not be maintained. When there could not, it can be."

It follows, therefore, that the court below erred in disregarding the plea of former conviction, and that on the evidence he should have sustained the plea and dismissed the prosecution.    It is due the court below to say that he followed in his rulings, Commonwealth v. Respass (Ky) 50 S. W., 549.    That case is rested on the ground that the proof there failed to bring it within the rule referred to, and so far as it is in conflict with this opinion it is overruled.

Where the defendant has been found guilty under an indictment for nuisance, the court may by proper orders require it to be abated.    Bollinger v Commonwealth, 16 Ky. Law Rep., 395: Bishop, Criminal Law, section 1079. And if, after the indictment is found against him, the defendant continues to maintain the nuisance, he may be subsequently indicted for its continuance after the finding of the former indictment; for proof of this could not be used to secure a conviction under that indictment, and a prosecution for an offense can not operate as a license to continue it.    The State has, therefore, an adequate remedy for the suppression of such offenses, without splitting them up in different prosecutions, all begun at the same time, as was done in this case.    Judgment reversed, and cause remanded for further proceedings consistent with this opinion.

Judge Guffy dissents.