CASE 84.—PROCEEDINGS BY THE COMMONWEALTH ON
RELATION OF THE ATTORNEY GENERAL,
AGAINST J. B. RESPASS AND OTHERS TO RE-
STRAIN THEM FROM COMMITTING A PUBLIC
NUISANCE BY OPERATING A POOL ROOM.—
February 5.

# Respass, &c. v. Comth., ex rel Atty. Gen'l
## Borro v. Same
## Davezac v. Same

131  807
p131  818

Appeal from Kenton Circuit Court.

W. McD. Shaw, Circuit Juoge.

Judgment for plaintiff, defendants appeal—Af-
firmed.

1. Nuisance—Public Nuisances—Injunction—Powers of Attorney
General.—The Attorney General possesses common-law pow-
ers, and, being the chief law officer of the state, can main-

tain proceedings to enjoin nuisances, where the state's interest demands it.

2. Injunction—Unlawful Use of Property—Irreparable Injury.— While equity will not restrain personal conduct, an owner of property must so use it as not to injure the rights of others, and a court of equity will restrain the unlawful use of property to prevent irreparable injury.

3. Same—Acts Constituting Crime.—While the commission of a crime will not be restrained, the power of the court of chancery to enjoin the unlawful use of property is not affected by the fact that the act to be restrained constituted a crime.

4. Nuisance—Operation of Poolrooms—Scope of Injunction.— While a chancellor cannot enjoin owners of property from operating a poolroom anywhere, he may enjoin them from so using their property as to make it a public nuisance.

5. Same—Subjects of Relief—Affecting Public Morals.—A nuisance which affects only the morals of a community can be enjoined, as well as one affecting health or personal safety.

6. Same—Public Nuisances—Poolrooms.—A gambling house or poolroom, where money or other things of value are bet and won or lost on horse races, and where tickets, pools, and chances on horse races run or to be run in the state or in the United States and Canada are bought and sold, are public nuisances.

7. Same—Injunction—Prospective Operation.—A judgment enjoining the maintenance of a nuisance is prospective in its operation, having no reference to past acts.

MYERS & HOWARD and BYRNE & READ for appellants.

(No brief in the record for appellants.)

N. B. HAYS, Attorney General, C. H. MORRIS, S. D. ROUSE, F. M. TRACY and W. H. MACABOY for appellee.

The points discussed and the authorities cited are as follows:

1. The authority of the Attorney General to institute this action is not statutory, but is derived from the common-law, and is universally recognized. (Attorney General v. Shrewsberry Bridge Co., L. A. 21, Ch. Div. 752; Attorney General v. Beorning, 3 McN. & Gor. 453; Comth. v. McGovern, 25 Ky. Law Rep. 411;

Respass, &c., v. Comth. ex rel Attorney General.

Jenkins, &c., v. Berry, Judge, 26 Ky. Law Rep. 1146; Chambers v. Baptist Educational Society, 1 B. M. 215-219; Comth. v. Lexington & Harrodsburg T. P. Co., 6 B. M. 397-398; People v. Cramer, 68 N. Y. Sup. 383-386; Parker v. May, 59 Mass. (5 Cush.) 336; Bispham's Equity, sec. 439; Pomeroy's Equity, sec. 1349; Wood on Nuisance (3d ed.) sec. 819; Eden on Injunctions, sec. 259; Lofton v. Collins, 61 L. R. A. 150; Georgetown v. Alexandria Canal Co., 12 Pet. (U. S.) 91; People v. Oakland Water Co., 118 Cal. 234-239; People v. Vanderbilt, 26 N. Y. 293; Attorney General v. Wood, 108 Mass. 436.)

2. The pool rooms are per se common public nuisances. (Bollinger v. Comth., 98 Ky. 576; Cheek v. Comth., 79 Ky. 359; Comth. v. Enright, 98 Ky. 635; Comth. v. Respass, 21 Ky. Law Rep. 140; Cawein v. Comth., 22 Ky. Law Rep. 1724.)

3. Courts of equity have undoubted jurisdiction to enjoin public nuisances. (Story on Equity Jurisprudence, vol. 2, sec. 921; Pomeroy's Equity, vol. 3, sec. 1349; Bispham's Equity, sec. 439; Dumesnil v. Dupont, 18 B. M. 800-804; Mercer County v. City of Harrodsburg, 23 Ky. Law Rep. 1774; Comth. v. McGovern, 25 Ky. Law Rep. 411; Alexander v. Tebeau, 24 Ky. Law Rep. 315; Hahn v. Thornberry, 7 Bush. 406; Green v. Asher, 10 Ky. Law Rep. 1006; Pfingst v. Senn, 94 Ky. 556.)

4. Equity having power to enjoin public nuisances, the fact that in this instance the nuisance is gambling, pool selling, etc., and therefore criminal, does not in the least degree interfere with the power of the court to enjoin. All public nuisances are, in this State, criminal. If therefore, it be conceded that equity may enjoin public nuisances, it must be conceded that equity may enjoin criminal acts and the fact that criminal courts may convict and issue orders of abatement is of no consequence because such procedure is authorized in all cases of public nuisance. (21 Am. & Eng. Ency of Law, 703; Columbia Athletic Club v. State, 143 Ind. 98; State v. O'Lear, 52 L. R. A. 279; State v. Crawford, 28 Kan. 726; State v. Saunders, 66 N. H. 39; Re Debs, 159 U. S. 564; Littleton v. Fritz, 65 Iowa 488; Weekly v. Page, 46 L. R. A. 553; Charlton v. Rugg, 149 Mass. 550; Attorney General v. Hunter, 16 N. C. 12; People v. St. Louis, 10 Ill. 351-367; Ingersoll v. Rosseau, 76 Pac. Rep. 513-515; Moore v. State, 99 N. W. 249.)

5. The term "adequate remedy at law," as sometimes used by courts of equity, means "legal" not "criminal" remedy. (Underhill v. Murphy, 25 Ky. Law Rep. 1732; Miley v. Ohearnes, 13 Ky. Law Rep. 836; Hahn v. Thornberry, 7 Bush 406.)

6. Neaf v. Palmer, 103 Ky. 496, is contrary to reason and authority both in and out of this State and should be overruled.

(Crawford v. Terrill, 128 N. Y. 341; Hamilton v. Whiting, 11 Md. 128; Blagen v. Smith, 44 L. R. A. 522; Weekly v. Page, 46 L. R. A. 553; Ingersoll v. Rosseau, 76 Pac. Rep. 513; Moran v. French, 61 Texas 173; Green v. Asher, 10 Ky. Law Rep. 1006; Comth. v. McGovern, 25 Ky. Law Rep. 411; Mercer County v. City of Harrodsburg, 23 Ky. Law Rep. 1744.)

7. The existence or non-existence of a violated property right is wholly immaterial. The duty of the Commonwealth to safeguard the social, physical and moral well-being of it's people, is a sufficient interest to justify it in applying to its court for relief. (Re Debs, 158 U. S. 583-584; Comth. v. McGovern, 25 Ky. Law Rep. 411; Mercer County v. City of Harrodsburg, 23 Ky. Law Rep. 1744; Alexander v. Tebeau, 24 Ky. Law Rep. 315; City of Redwine v. Gulpil, 41 L. R. A. 321; Attorney General v. Hunter, 16 N. C. (1 Dev. Eq.) 12; Columbia Athletic Club v. State, 143 Ind. 93; Pine City v. Munch, 43 Minn. 342; Butterfoos v. State, 40 N. J. Eq. 325; State v. Crawford, 28 aKnsas 726; Mugler v. Kansas, 123 U. S. 625; State v. Saunders, 66 N. H. 39.)

8. If it is discretionary with the court to grant or refuse the relief prayed for, the court should exercise that discretion in favor of the Commonwealth in this action. Every consideration of public morality and decency urgently demands that the relief be granted.

OPINION OF THE COURT BY JUDGE HOBSON—Affirming.

These three cases present identically the same questions and will be determined together. They are each a proceeding instituted by the Attorney General by a petition in equity in the Kenton circuit court. In one of the cases these facts are set out: The defendants own and are in possession of a certain house and lot in Covington, Ky., in which they operate and conduct a gambling house or poolroom, where money or other things of value are bet and won or lost on horse races, and where tickets, pools, or chances on horse races run or to be run at the various race courses in the State of Kentucky and in the United States and Canada are bought and sold; the owners

of the property renting it to their codefendants for the purpose named and suffering them to use it for that purpose. The premises are located immediately adjoining the entrance to the Covington & Cincinnati Suspension Bridge. All street cars entering the city of Covington pass within 100 feet of the place, many thousand people are required to pass by the premises on their way to and from the city of Cincinanti, and strangers coming to the city are required to pass by the place and to come in contact with the frequenters of the gambling house or poolroom. The unlawful and criminal business conducted by the defendants attract to the place and its vicinity, from Cincinnati and other places, a large number of criminals, gamblers, low and dissolute characters, sporting men, dissolute women, and disorderly and idle persons without lawful means of support. The presence of these persons in the streets of Covington has a demoralizing effect on the good order and moral welfare of the community, constituting a public nuisance, and an ever-present menace to the morality and well-being of the community. The nuisance has continued in the place for many years despite the processes of the criminal court. From year to year, for many years, the person or persons operating the gambling house have been convicted and fined from time to time in the Kenton circuit court, and thereupon, to obviate the effect of the judgment or judgments, the business of operating the gambling house at that place has been transferred to the name of some person or persons other than the one so convicted, and so the nuisance has been steadily maintained, despite the processes of the criminal court, and will be maintained in future, to the great and irreparable injury of the people of the city of Covington and the Commonwealth of

Kentucky. In the other two cases similar facts are shown. On these facts an injunction was prayed, restraining the defendants from maintaining the nuisance on their premises. The court granted the injunction as prayed, and the defendants appeal.

Two questions are made on the appeal: First, the Attorney General was without authority to institute the proceedings; second, the chancellor was without power to grant the relief given.

1. The office of Attorney General comes to us with the common law. The Attorney General at common law, as the chief law officer of the State, was allowed to institute proceedings of this sort when the interest of the State demanded it. There are numerous cases in England and in this country where the authority of the Attorney General to maintain such an action has been upheld; and it must be presumed that, when the office was created in Kentucky, it was contemplated that the officer should have all the powers then recognized as belonging to it, except so far as these powers were limited by statute. It cannot be presumed that, in creating the State government and in creating the law department, it was contemplated that the head of the law department should not have such authoirty as was exercised by the Attorney General at common law. He and he alone has authority to institute such a proceeding. See Attorney General v. Shrewsbury Bridge Co., L. R. 21 Ch. Div. 752; Attorney General v. Cockermouth Local Board, L. R. 18 Equity, 172; Attorney General v. Berning R. R. Co., 3 McNaghten & G. 453; Georgetown v. Alexandria Canal Co., 12 Pet. 91, 9 L. Ed. 1012; People v. Oakland Water Company, 118 Cal. 234-239, 50 Cal. 305; People v. Vanderbilt, 26 N. Y. 293; Attorney General v. Wood, 108 Mass. 436, 11 Am.

Rep. 380, and cases cited. This question was before us in Commonwealth v. McGovern, 116 Ky. 212, 75 S. W. 261, 66 L. R. A. 280, 25 Ky. Law Rep. 411, and, although it is not referred to in the opinion, it is necessarily concluded by the judgment, which sustained the proceeding and directed a judgment to be entered as prayed by the petition.

2. It is earnestly insisted that the chancellor cannot exercise the powers of a grand or petit jury, that he has no jurisdiction to enjoin a crime, and that the defendants cannot be deprived of their constitutional right to a trial by jury. The court of chancery has from its beginning had jurisdiction to regulate the use of property. The law requires each man to so use his property as not to injure the lawful rights of others, and when the owner of property unlawfully infringes upon the rights of others the court of chancery, to prevent irreparable injury, may grant relief by way of injunction. The power of the court of chancery in this class of cases is not affected by the fact that the act of the defendant which is complained of may be also a crime. The chancellor will not enjoin the mere commission of a crime; but, when property is used in such a way as to become a nuisance, the continuance of this nuisance, may be enjoined. There is a manifest distinction between enjoining an individual from committing a crime and enjoining the owner of property or its possessor from allowing his property to injure others. In the latter case the chancellor only regulates the use which may be made of the property, restraining the defendants from so using their property as to make it a nuisance to others. If the use of the property is such as to require that it should be restrained by injunction, the chancellor's jurisdiction is not affected by the fact

that this use may be also a criminal offense. The
remedy in equity is purely preventive. The chan-
cellor does not punish the defendant for what he has
done. This is left to the criminal courts. The only
thing that he determines is that the defendants must
not in future so use their property as to be a nuisance.
The judgment does not convict them of any offense.
It merely restrains them in future from so using
their property as to make it a nuisance. The judg-
ment deals merely with the use of the property in
question.

The chancellor may not enjoin the defendants
from operating a poolroom anywhere; but he may
enjoin them from so using the property referred to
in the judgment as to make that property a public
nuisance. The court of chancery will not restrain
personal conduct, but it will restrain the unlawful
use of property. In Commonwealth v. McGovern,
supra, we showed that the jurisdiction of the courts
of equity in regard to public nuisances may be traced
back to the reign of Queen Elizabeth, and may be
exercised where the nuisance affects the health,
morality, or safety of the community; the ground of
jurisdiction being the ability of the chancellor to
give a more complete and perfect remedy than is
attainable at law by arresting the nuisance that is in
progress and protecting the public against it by per-
petual injunction. If the defendants were sending
into the air from their property poisonous vapors
that destroyed the health of the community, for the
protection of life the chancellor might enjoin them
from so using their property; or if they had upon
their premises in the city of Covington a manufac-
tory of some deadly explosive, which constantly en-
dangered the safety of the city, the chancellor might

enjoin this use of their property for the protection
of the public, without waiting for the tardier pro-
cesses of law, which might not be effective until great
loss of life had ensued.  It was in effect conceded in
the argument that in such cases as these, for the
protection of health or personal safety, the chancellor
might intervene by injunction.

But it was earnestly insisted that the rule should
not be applied to nuisances which affect only the
morals of the community.  We cannot see the force
of the distinction.  The State is interested in the
character of its people, no less than in their health
or personal safety.  The character of a state de-
pends upon the character of the individuals consti-
tuting it.  If the people become depraved, the state
cannot long exist.  It may have wealth, it may have
all that goes to make a great state, and yet, if its
men are without character, it is a crumbling ruin.
The State is as much interested in restraining those
things which destroy the character of its people as
in those things which destroy their health or personal
security.  A house such as is described here is not
only a rendezvous for the vicious, but a training
school to make others like them.  That such a house
is a public nuisance has been often declared.  See
Bollinger v. Commonwealth, 98 Ky. 576, 35 S. W.
553, 17 Ky. Law Rep. 1122; Cheek v. Commonwealth,
79 Ky. 359, 2 Ky. Law Rep. 339; Commonwealth v.
Enright, 98 Ky. 635, 33 S. W. 1111; Commonwealth
v. Respass, 50 S. W. 549, 21 Ky. Law Rep. 140;
Cawein v. Commonwealth, 61 S. W. 275, 22 Ky.
Law Rep. 1734.  To say that a court of equity may
not enjoin a nuisance of this sort, when the criminal
laws have proven inadequate, is to say that the
Commonwealth is unable to protect its citizens.  If

it may protect its citizens by injunction from such a use of property as would breed a pestilence among the people, upon what principle can it be maintained that it may not by injunction prevent that use of property which, while it does not destroy the body, destroys the character, and leaves only the image of a man, unfitting him for the duties of citizenship? We held in Commonwealth v. McGovern that a court of equity may enjoin the owner of property from allowing it to be used for a prize fight, which congregated upon it a large body of that class of persons that are described here. The same conclusion in effect has recently been reached in State v. Canty, 207 Mo. 439, 105 S. W. 1078, 15 L. R. A. (N. S.) 747, by the Supreme Court of Missouri, where a bill like that before us was filed by the Attorney General to enjoin the defendant from continuing to manage and conduct a public exhibition known as "bull-fighting" and "bull-baiting." The court went very fully into the authorities, and granted the injunction. In Columbian Athletic Club v. State, 143 Ind. 98, 40 N. E. 914, 28 L. R. A. 727, 52 Am. St. Rep. 407, the court granted an injunction restraining a prize fight; the decision being substantially the same as in Commonwealth v. McGovern. In State v. Olympic Club, 47 La. Ann. 1095, 17 South. 599, the same conclusion was reached, and the use of property for a prize fight was enjoined. A like conclusion was reached in State v. Saunders, 66 N. H. 39, 25 Atl. 588, 18 L. R. A. 646, Chicago Fairgrounds Association v. People, 60 Ill. App. 488, and Reaves v. Oklahoma, 13 Okl. 396, 74 Pac. 951. See, also, Attorney General v. Jamaica Pond Aqueduct, 133 Mass. 361; State v. Crawford, 28 Kan. 726, 42 Am. Rep. 182; Re Debs, 158 U. S. 564, 15 Sup. Ct. 900, 39 L. Ed. 1092; Atty.

Gen. v. Heatley, 1 Ch. 560 (Eng.); People v. Truckee Lumber Co., 116 Cal. 397, 48 Pac. 374, 39 L. R. A. 581, 58 Am. St. Rep. 183; note to Akers v. Marsh. 9 Am. & Eng. Dec. in Equity, 453; Mercer County v. City of Harrodsburg, 66 S. W. 10, 23 Ky. Law Rep. 1744, 56 L. R. A. 583; Attorney General v. Hunter, 16 N. C. 12.

No constitutional right of the defendants is violated by the proceeding. They are proceeded against in precisely the same way as in all other cases in equity. They are simply prevented from so using their property as to make it a nuisance in future. The judgment has reference solely to what they may do in the future. It has no reference to what they have done in the past. Louisville Gas Co. et. al. v. Kentucky Heating Co., 111 S. W. 374, 33 Ky. Law Rep. 912.

Judgment affirmed.