# Nicholson v. Alvey, et al.

(Decided October 31, 1912.)

## Appeal from Jefferson Circuit Court (Chancery, First Division).

1.  Gambling—Wagering on Horse Races—Action to Recover Money Lost—Telegraph and Telephone Companies.—An action for the recovery of money lost in betting on horse races brought under section 1956 Ky. Stats., was properly dismissed as to telegraph and telephone companies which it was alleged furnished the information on the races, it not being alleged in the petition that the telegraph or telephone companies won any of the money, or received any of plaintiff's losses.

2.  Same—Injunction Against Telegraph and Telephone Companies.—As to the contention that an injunction should have been granted restraining the telegraph and telephone companies from further aiding defendants in carrying on their business of gambling on races, if an injunction is granted at all, it can only be done at the instance of the Attorney General.

3.  Judgment For Part of Demand—Satisfaction of Not Bar to Appeal.—While the judgment was for less than the demand sued for, its satisfaction does not prevent plaintiff from prosecuting an appeal as to so much of the demand he did not recover.

4.  Finding of Lower Court.—As to the question of whether or not Laffon was the agent of Alvey in the conduct of the business, the conclusion of the trial court that Laffon was the agent is sustained by the evidence.

PAUL BLACKWOOD, FRANK A. DOUGLAS for appellant.

KOHN, BINGHAM, SLOSS & SPINDLE for Alvey, et al.

A. E. RICHARDS for Western Union Telegraph Company.

W. PRATT DALE for Cumberland Telephone and Telegraph Company.

OPINION OF THE COURT BY JUDGE NUNN—Affirming.

This action was brought by appellant, John Nicholson, under section 1956, Kentucky Statutes, to recover the sum of $12,000 alleged by him to have been lost by wagering on horse races, to Larry Laffon, between June 1, 1908, and September 1, 1909. Nicholson claimed that Laffon was the agent of his co-appellee, Alvey; that he lost the money to Laffon who collected and paid it over

to Alvey. This is the manner in which he claims Alvey came into possession of the money he lost on the horse races during the time stated. The petition does not specify any sum that was lost during any certain twenty-four hours between the dates named. The allegations of the petition are, in substance: That he wagered $5 and upwards on dates not specified, only as being between June 1, 1908, and September 1, 1909; and that he lost by making these wagers more than $12,000 during that time. He also filed an amended petition in which he made the Western Union Telegraph Company, the Cumberland Telephone & Telegraph Company and the Louisville Home Telephone Company defendants, and alleged that, within five years next preceeding July 1, 1908, and July 1, 1910, the telegraph and telephone companies knowingly and unlawfully, for hire and recompense, by and through their agents and employes furnished to Edward Alvey and his co-appellee and agent, Larry Laffon, by and through their various lines and wires, telephone and telegraph instruments, information of horse races being run on divers days between the dates named and on various race tracks and at various points in the United States, Canada and elsewhere, and by this wrongful conduct enabled Alvey and his co-appellee, Laffon, to conduct and operate an office in the city of Louisville, county of Jefferson, to receive, make and lay wagers on the outcome of horse races; that appellant lost by reason of such unlawful information, the sum of $12,000 within the time stated, in amounts of $5 and more within periods of twenty-four hours; and he prayed judgment against appellees for $12,000.

By another pleading, appellant sought an injunction against the telegraph and telephone companies, restraining them from further aiding Laffon and Alvey in the conduct of their unlawful business.

The court dismissed the action as to the telephone and telegraph companies and required appellant to elect as to which he would proceed against, Alvey or Laffon, to which appellant excepted and elected to proceed against Alvey. The court's action in dismissing the action with reference to the telephone and telegraph companies can be readily understood. The statute, section 1956, by virtue of which the action was instituted, in so far as it applies to this case, is as follows:

"If any person shall lose to another at one time, or within twenty-four hours, five dollars or more, or property or other thing of that value, and shall pay, transfer, or deliver the same, such loser, or any creditor of his, may recover the same, or the value thereof, from the winner, or any transferee of the winner, having notice of the consideration, by suit brought within five years after the payment, transfer or delivery."

It is not alleged in the petition that either the tele-graph or telephone companies won any of the money or that they received any of his losses. If these companies violated any law, it was section 3914b of the Kentucky Statutes.

Appellant's counsel contend that they should have been granted an injunction against the companies, prohibiting them from furnishing Alvey any further information to enable him to carry on his nefarious business. If the facts and circumstances authorize the granting of an injunction at all, it can only be done at the instance of the Attorney General. See Commonwealth v. McGovern, 116 Ky., 212, and Respass v. Commonwealth, 131 Ky., 807. In the last named case it was charged in the petition that the selling of pools in the places described in the petition, was a public nuisance, and this court so found, but said that it knew of no authority authorizing a court to suppress it at the instance of an individual. If the telegraph and telephone companies are guilty of anything, it is of violating section 3914b of the Statutes, and they are criminals to that extent, but this court has no power to enjoin criminals. See Commonwealth v. McGovern, supra. Appellant did not and could not claim that he would lose money in the future unless Alvey was restrained from getting information concerning the races. Nor could he claim that any of his property rights were affected or needed protection by an injunction. All that appellant needed was sufficient will power to remain away from Alvey's place of business and to not deal with his agents. He does not occupy a position which entitles him to the aid of a court of equity.

We cannot understand why the court required appellant to elect as to whom he would proceed against, Alvey or Laffon, unless it was because it was distinctly alleged by appellant that the acts of Laffon were as agent of Alvey and that Alvey received all the losses of appel-

lant, as principal. It was nowhere alleged that Laffon, personally, won and retained his losses or any part of them. We will not consider this matter any further, as the case was prosecuted to judgment against Alvey, and the jugdment has been satisfied. It is conceded that appellant received the amount of the judgment and the cost from Alvey, but this is in no way a bar to this appeal which is asking a reversal for the recovery of that portion of the $12,000 which he did not receive. Section 757 of the Civil Code governs this matter, and it is, in so far as applicable, as follows:

"But when a party recovers judgment for only part of the demand or property he sues for, the enforcement of such judgment shall not prevent him from prosecuting an appeal therefrom as to so much of the demand or property sued for that he did not recover."

The lower court gave appellant judgment for only $700 and his demand was for $12,000.

Alvey denied in his answer to the petition that appellant lost the sum stated or any other sum to Laffon; denied that Laffon was his agent and denied that he received any amount from any source which had been lost by appellant.

There was a large amount of testimony taken upon the trial, and it was so very conflicting that it is not possible to arrive at the real facts of the case. There was much testimony taken, pro and con, upon the question as to whether or not Laffon was the agent of Alvey, or whether Laffon was acting for himself in his dealing with appellant. The lower court concluded, however, that Laffon was the agent of Alvey, and when we give to this finding the weight to which it is entitled, we cannot say that the lower court erred in this matter.

The testimony for appellant tended, strongly, to show that he sustained losses while betting with Laffon, Alvey's agent, to the extent of several thousand dollars, but the testimony for appellee tends equally as strong to show that he did not lose any money of which Alvey was the winner and that his losses did not exceed $500 to Laffon. Appellant showed by his testimony that in July, 1908, he had on deposit in a bank in New Albany about $16,000 and that he had several thousand dollars in cash on his person; that from that time to September,

1909, he lost all of this by betting on horse races and most of it was won by appellee; that he knew appellee won at least $12,000 of it. Appellant showed by testimony that during the time named appellant was not engaged as much as a day in any legitimate business or at any labor; that he had a family and himself to provide for out of this fund; that he traveled and engaged in betting a great portion of the time in St. Louis, New York, Latonia, Nashville, Canada and other places and lost large sums of money and also sustained considerable losses while engaged in pool selling himself at one of the places named. In view of the complicated and conflicting testimony, we cannot do better than adopt the remarks of the lower court upon the question as to the extent of appellant's losses, to-wit:

"As regards the question of the extent of his losses to the defendant, it seems to the court that the plaintiff has signally failed in his proof, and that except as to the two checks for $100 each, the court is furnished practically no basis for a finding other than the admission of Laffon himself.

The plaintiff testified that prior to July, 1908, he was in the coal business; that on that date he sold out his business for about $20,000, and that on July 1, 1908, he had on deposit to his credit in bank $16,330.07 and filed his bank book showing that fact; that in June, 1908, he lost $1,800; that in one day he lost $1,130 and that from the 1st of September, 1908, his bets ran from $200 to $500 a day, but that he kept no record of his losses, and the two $100 checks were all that he produced in connection with his dealing with the defendant.

The defendant introduced several witnesses whose testimony tended very strongly to show that the plaintiff had sustained very heavy losses through bets made elsewhere than in Louisville, and this proof was not rebutted.

A court of justice cannot guess or surmise or conjecture concerning such questions, much less arbitrarily determine the amount of the recovery. It can and should found its judgment only upon competent and sufficient proof of the facts. In the case at bar, Laffon places the plaintiff's net loss at not exceeding $500, and, in the absence of more definite proof, the court finds that

that sum, plus $200 evidenced by the two checks, or $700 in all, was the amount of it;" &c.

For these reasons, the judgment of the lower court is affirmed.