## Kentucky State Board of Dental Examiners v. Payne.

### (Decided March 5, 1926.)

### Appeal from Rockcastle Circuit Court.

1.  Injunction—Action to Enjoin Practice of Dentistry Without Obtaining License, Required by Statutes, May be Brought by Board of Dental Examiners, Rather than in Name of Attorney General (Ky. Stats., Sections 2636-1 to 2636-22).—Action, under Ky. Stats., section 2636-1 to 2636-22, to enjoin practice of dentistry without license, required by section 2636-3, may be brought by members of state board of dental examiners, and need not be brought in the name of the Attorney General, as relator for the Commonwealth, in view of intent of legislature, as indicated by section 2636-8.
2.  Injunction—Ordinarily, injunction will not lie to prevent commission of crime.
3.  Injunction—Injunction Will Lie to Prevent Practice of Dentistry Without Obtaining License, even though Defendant would be Laying Himself Open to Penalty in Doing so (Ky. Stats., Sections 2636-1 to 2636-33).—Ky. Stats., sections 2636-1 to 2636-22, regulating practice of dentistry, is intended for protection of health and life of those needing service, and injunction will lie to prevent violation of statute, such as practicing without license, required by section 2636-3, notwithstanding such practitioner lays himself open to penalties imposed by section 2636-18.

W. E. BEGLEY for appellant.

S. D. LEWIS for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

. The appellants and plaintiffs below, as members of the Kentucky State Board of Dental Examiners, filed this equity action in the Rockcastle circuit court against appellee and defendant below, George Payne, praying that he be enjoined from practicing dentistry in this Commonwealth without having first obtained a license so to do, as is prescribed and required by section 2636-3 of our present statutes. It was alleged in the petition that defendant had opened an office in Mt. Vernon and was and had been for some time prior thereto actively engaged in the practice of dentistry, and that he had neither applied for nor obtained the license required by the section of the statute and that the penalty of not less than $5.00 nor more than $20.00 prescribed in section 2636-18 was inadequate to secure the enforcement of the highly public policy purpose of the legislature in the enactment of the statute, and that great and irreparable injury would result, not only to the members of the public who might become patients of defendant, but also to others engaged in the practice of the profession and who had complied with the requirements of the law. The necessity for the invoking of the remedy as well as the grounds therefor were more elaborately stated, but which we deem unnecessary to more extensively state in this opinion. The court sustained defendant's demurrer filed to the petition and, plaintiffs declining to plead further, it was dismissed, and to reverse that judgment this appeal was prosecuted.

The first question for determination is one of practice, and it is: Whether the action, if maintainable at all, was properly commenced by plaintiffs as members of the board of examiners created by the statute, which was enacted in 1912 and is now sections 2636-1 to and including 2636-22 of the 1922 edition of Carroll's Kentucky Statutes? Generally, where injunctive relief of the character here sought is granted by the court in cases where the Commonwealth is the moving spirit behind it, the action should be brought in the name of the attorney general as relator for the Commonwealth. Commonwealth v. McGovern, 116 Ky. 212; Respass v. Commonwealth, 131 Ky. 807, and other cases following those opinions. But it is competent for the legislature to provide otherwise, since there is nothing in our Constitution limit-

ing its right to so prescribe, and in the absence of such constitutional limitation it has the authority to do so under the well known principle that the legislatures of the states have all power, except those withheld by the Constitution of the particular jurisdiction. There is nothing in our Constitution limiting or circumscribing the power or authority of the legislature to prescribe by whom such actions when maintainable at all may be prosecuted. Besides, the right of the legislature to lodge the authority to bring such suits with whatever governmental agency it sees proper is stated as a correct principle by Mr. Joyce in his Law of Nuisances, section 426, and was recognized and upheld by the Texas court of last resort in the case of Ex Parte Allison, 90 S. R. W. 492. Other authorities and courts recognize the same right, but the proposition is so clear to our minds that we deem it unnecessary to cite them.

Accepting that as true, the next question is: Does our statute, composed of the sections *supra,* vest the Board of Dental Examiners with authority to maintain the action? The first section of the act (2636-1) at its beginning says: "That the Kentucky State Board of Dental Examiners heretofore created be continued, to consist of five practicing dentists, whose duty it shall be to carry out the purposes and enforce the provisions of this act as hereinafter specified." Subsection 8 of the act, now section 2636-8 of our statutes, prescribes the fees to be paid by the applicant for the license when originally obtained and for each renewal thereof, and directs the purposes for which such fees when collected may be expended, a part of which was "to provide the means for carrying out and enforcing the provisions of this act." The latter part of the same section says: "All moneys received in excess of said per diem allowances and other expenses, herein provided, shall be held by the secretary-treasurer of said board as a special fund for meeting the other expenses of said board, and for such use as the said board may deem necessary in the enforcement of this act." Clearly it was intended by the legislature from the excerpts we have inserted from the statute to vest the board with power to enforce its provisions by whatever lawful means it might employ for the purpose; and, without further discussion, we hold that if the remedy here invoked is available for the purpose of enforcing the provisions of the act it may be maintained

by the members composing the board, since the statute does not create it a corporation.

The next and vital question in the case is: Can the remedy by injunction be resorted to for the purpose of preventing one practicing the profession of dentistry without complying with the provisions of the statute by procuring a license and complying with its other requirements? Defendant contends, and it was no doubt so held by the trial court, that the purpose of the petition was only to enjoin defendant from the commission of a crime and that the equitable relief of injunction may not be employed for such a purpose, and the McGovern and the Respass cases, *supra*, as well as the later case of Johnson v. Tarter, 199 Ky. 47, are cited in support of that proposition. Perhaps a hundred more cases as well as innumerable text writers could also have been cited in support of the general doctrine, one of which from this court is Commonwealth v. Ruh, 173 Ky. 771, L. R. A. 1917D, 283. See also annotation in 35 A. S. R., page 670. We have no quarrel to make with the broad statement of the doctrine as applied in the cases referred to and as stated by all text writers, but a reading thereof will disclose that many exceptions have been ingrafted on the doctrine as so broadly stated, and that courts in the exercise of equitable jurisdiction will in a number of cases employ the injunctive remedy to prevent the commission of forbidden acts, although the perpetrator may be guilty of a crime or subject himself to a penalty by committing them; a familiar illustration of which is, the enjoining of a public nuisance created and maintained by the use of property contrary to the provisions of some law and by means of which the maintainer of the nuisance subjects himself to a prosecution for the commission of a crime.

Of such were the McGovern and Respass cases, *supra,* and the very recent one of Erlanger Kennel Club v. Daugherty, — Ky. —, and it would be no difficult matter to sustain the doctrine of those cases by opinions from other jurisdictions and by acknowledged authoritative text writers, one of the latter of which is Mr. Pomeroy in his excellent work on Equitable Remedies, 1919 edition, volume 5, section 1893, and which is section 479 of his Equity Jurisprudence to which his equity remedies is supplemental. At the beginning of that text the learned author says: "As a public nuisance concerns the public generally, it is the duty of the government to take

measures to abate or enjoin it," and in the same section, in defining what is such a public nuisance, it is said, quoting from the case of State v. Lindsey, 85 Kan. 79, 35 L. R. A. (N. S.) 810: "Every place where a public statute is openly, publicly, repeatedly, continuously, persistently, and intentionally violated is a public nuisance," and numerous cases dealing with as many characters of public nuisances are cited in the notes to the text. In the next section (1894), continuing the discussion of the same character of relief, *i. e.*, injunctions by the government, the text says: "While the right of the government to obtain an injunction to restrain criminal acts is not confined strictly to cases of nuisance, it would seem that it should be limited to cases closely analogous;" but the writer continues by saying, that in all cases where property rights of many citizens are involved the remedy is no doubt available, and then says: "And it would *seem* (our italics) that only in such a case should the jurisdiction be assumed." No comment is made by the learned author upon the last quoted statement, but he cites as supporting it the case of Higgins v. Lacroix, 119 Minn. 145, 41 L. R. A. (N. S.) 737, 137 N. W. 417, which seems to do so. But that court in so holding cited no case nor advanced any convincing reason therefor. Besides, the pronouncements of the court are at variance with what we held in the Respass case, *supra*, and, in addition, the violations there involved (the refusal to pay an exacted license for operating a picture show) did not so vitally affect the physical welfare of the members of the public as do the violations of the statute involved in this case which, as may be readily seen, are intended to protect those in need of dental treatment and to, in a measure at least, guard against empiricism and incompetency in the profession. The statute was enacted in furtherance of a high and most commendable public policy. It had in view, not only the possible consequences ordinarily resulting from inefficiency, but also the protection of the lives of the subjects which might be placed in peril if the incompetent practitioner was permitted to ply his trade; for it is a well known fact that modern methods of treatment of those needing the services of a dentist require the administration of deadly poisons, and those entrusted with and who use them should be qualified for the purpose and it was the intention of the statute to *require* them to do so.

The Supreme Court of the United States in the case of In re Debs, 158 U. S. 564, in commenting on the right of the government to maintain an equity action for an injunction, although the violations involved constituted a crime, said: "Every government, entrusted, by the very terms of its being, with powers and duties to be exercised and discharged for the general welfare, has a right to apply to its own courts for any proper assistance in the exercise of the one and the discharge of the other, and it is no sufficient answer to its appeal to one of those courts, that it has no pecuniary interest in the matter. The obligations which it is under to promote the interest of all, and to prevent the wrongdoing of one resulting in injury to the general welfare, is often of itself sufficient to give it a standing in court." Prior to that statement it was said in the opinion, that the government had a property right in preserving the unmolested carrying of the U. S. mail under contracts it made for the purpose, but the court also said: "We do not care to place our decision upon this ground alone," and that statement was immediately followed by the above excerpt from the opinion.

The Supreme Court of Kansas in the case of State v. Lindsay, 85 Kas. 79, 35 L. R. A. (N. S.) 810, had before it a question precisely analogous to the one involved here. A statute of that state provided that owners and operators for compensation of institutions for the care and treatment of persons mentally deranged or of unsound mind, should first obtain a license from the state board of health to do so. The defendant in that case undertook to operate such an institution without first obtaining the statutory license and the state board of health filed the action to enjoin him from doing so and the relief was granted, notwithstanding the fact that the statute provided for a penalty for operating the institution without the license. The court recognized the general doctrine, *supra,* that ordinarily a court of equity would not enjoin the commission of a crime and the reluctance with which it would in any case do so, but said that the relief would be granted unhesitatingly "where the remedy is not adequate, and it is necessary to protect the rights of the public or an individual. A court is not powerless to prevent the doing of an act merely because it is denounced as a public offense." Further along in the opinion it was said: "The obligation of the government to promote the

interests of all, and to prevent the wrongdoing of one resulting in injury to the general welfare, is often sufficient to give it a standing in the court to obtain an injunction, and where a statute like the one under consideration is persistently and continuously violated, no good reason is perceived why the principle should not apply, although the place should not be held a public nuisance.''

Moreover, we are unable to see why the remedy would prevail in cases where purely property rights are involved and withheld in cases where health, and possibly life, is involved, since to hazard the latter is as much a nuisance as it is to imperil and impair the former, even if we were compelled to place the grounds of our decision upon the right of the Commonwealth to abate a nuisance.

But we are not convinced that the right to maintain this action rests solely upon that ground. The statute involved here is not purely a criminal one. It was enacted, as we have seeen, under the police power of the state and in furtherance of a wholesome public policy. The purpose was not to create a crime but to provide for the public welfare. The criminal feature was only intended as a deterrent and a partial restraint, and was inserted for the purpose of admonishing the practitioner that he must comply with the salutary terms of the statute, and which compliance was the chief purpose in enacting the statute, the penal section being merely incidental and collateral thereto; hence, the board by the express terms of the statute was given power to *enforce* its provisions. Manifestly, the legislature did not intend to limit the means of enforcement to the small and insignificant penalty provided in section 18 (2636-18) of the act. The board could make little progress towards enforceing the act if it was confined to prosecutions to recover the small penalties. If an arrest was made and the highest penalty administered the practice could be resumed and, perhaps, many times the amount of the penalty could be collected from ignorant and confiding patrons until the second violation was discovered, if at all, and in the meantime the mischief intended to be prevented would continue unabated. We, therefore, conclude that the legislature in enacting the statute intended to confer upon the board the right and the authority, as well as the duty, to see to it that no one practiced dentistry in the Commonwealth without first obtaining the re-

quired license, and that it was, therefore, granted the privilege of employing whatever legal process was necessary for that purpose; and in this respect the case is different from other cases wherein the remedy was disallowed.

It is freely admitted that equity will not enjoin the commission of a crime as such. As for instance, it will not enjoin one from carrying concealed deadly weapons or from committing any other crime, whether it be a felony or misdemeanor, where nothing else is involved except the commission of the crime, but where the chief purpose of the statute is to provide for the public welfare by regulating (not prohibiting) some already lawful calling and only provides a penalty for refusing to comply with such regulations, and which penalty is enacted as a punishment for such refusal, we can discover no logical reason why a court in administering the laws of its jurisdiction would be powerless to *prevent* the doing of the prohibited act merely because a penalty (only nominal in this case) is attached for a refusal to comply with the regulation.

We, therefore, conclude that the court erred in sustaining the demurrer to the petition, and the judgment is reversed, with directions to set it aside and to overrule the demurrer, and for proceedings consistent with this opinion.