## Goose et al. v. Commonwealth ex rel. Dummit, Attorney General.

October 24, 1947.

Lawrence F. Speckman, Judge.

W. Clarke ·Otte for appellants.

Eldon S. Dummit, Attorney General, Frank A. Ropke, Commonwealth's Attorney, and Charles E. Keller for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER —Affirming.

For a number of years a gambling establishment and saloon, called the "Sycamore Cafe," was conducted at 238-240 Central Avenue, in Louisville. The premises are located in an industrial and residential district in the southern part of the city, and across the street from a Railroad Y. M. C. A.

The property is owned by Roscoe Goose. A saloon license was held by J. W. Goose, but it appears a renewal was lately denied. A soft drink and restaurant license was in the name of Luther Goose. They are brothers and were joint proprietors.

Numerous raids by police officers revealed extensive taking of bets on horse races and other forms of gambling with cards, dice and other devices. During the past five years, J. William Goose and Luther Goose were arrested a number of times on charges of suffering gam-

ing on the premises, gambling, disorderly conduct, malicious assault and other offenses. The records show that all of these charges were "filed away" in court, although on a few occasions the defendants paid petty fines for disorderly conduct. Numerous others were arrested at the same place for the same offenses. Most of them were employees conducting the operations, or stooges to "take the rap." Among them are Mose Kennedy, alias Arthur Johnson, alias Arch Johnson, alias Ted Nelson, alias John Elmo Kennedy; John Redmon, alias John Lee; Edward Morrison, sometimes known as Edward Henry Morrison; John Langley, alias John Van Langley; Howard Smith; Togarmah H. Mounsey, alias Togo Munsey. It is a sordid record of wide open, flagrant violations of the laws of the state, both felonies and misdemeanors, particularly maintaining premises on which "persons assemble to wager money or anything of value on the result of any horse race." KRS 436.440. In short, there is portrayed a "common gambling house," conducted by common and professional gamblers.

These men confess a general course of criminality at this place. They have in some way been able to set the law at naught and to continue their criminal project. The processes of the criminal courts seem to have broken down in dealing with this place and these men. At least, they have failed to accomplish their primary purposes of protecting society, reforming the wayward and preventing future offenses of the same kind. As a consequence, the Commonwealth has invoked the processes of the court of equity and obtained an injunction against the named persons to abate their use of the property for the unlawful purposes.

The defendants seek to escape the restraint, obtain their release from the injunction and stay the hand of the law by appealing to this court.

Courts of equity will not ordinarily enjoin the commission of a crime. The statutes themselves are standing injunctions. But the mere fact that the act constituting a nuisance is also a crime does not hinder the use of the civil processes to procure its abatement where the use of property is a part. There may also be a remedy by indictment and upon conviction an abatement

by order of the criminal court where the nuisance may be of a continuing character. This remedy is sometimes confused with the other. But there is a clear distinction between enjoining an individual from committing a crime and enjoining him from using his or another's property so as to make it a nuisance to others, and between a proceeding in equity to abate a nuisance and a criminal prosecution to punish the offender for maintaining it. Commonwealth v. McGovern, 116 Ky. 212, 75 S. W. 261, 66 L. R. A. 280; Ehrlick v. Commonwealth, 125 Ky. 742, 102 S. W. 289, 31 Ky. Law Rep. 401, 10 L. R. A., N. S., 995, 128 Am. St. Rep. 269; Respass v. Commonwealth, 131 Ky. 809, 115 S. W. 1131, 21 L. R. A., N. S., 836; Kentucky State Board of Dental Examiners v. Payne, 213 Ky. 382, 281 S. W. 188; Commonwealth v. Kentucky Jockey Club, 238 Ky. 739, 38 S. W. 2d 987.

It is a historic function of courts of equity to grant preventive as well as remedial relief. Irreparable injury to property rights is perhaps the most common of causes for injunctive relief. Surely irreparable injury to public morals and individual character is of as grave concern as mere loss of dollars and cents. The ground of the jurisdiction is the ability of the chancellor to give a more complete and perfect remedy by a perpetual injunction. It is a weapon from the arsenal of equity to be used to protect Society—to meet the social need that continuation of the offenses at a given place shall be repressed. This abatement by injunction, independent of the criminal prosecution, is supported by ancient precedents and modern instances.

Though aimed at the use of specific property, the injunction operates upon the person of those who shall so use it and may be executed by process of contempt. And no subterfuge will be tolerated.

The principal ground upon which the appellants rely for a reversal of the judgment is thus stated:

"In an action of this character, it is necessary for the Commonwealth to prove that gaming operations were conducted on the premises, but in addition thereto, before injunctive relief can be procured, it is necessary for the Commonwealth to establish other facts showing that the peace and quiet or morals of the community

are injured as a result thereof; that dissolute or criminal characters frequent the premises; that residents are forced to come in contact with a lower strata of society or that the health or morals of the public generally are suffering by reason of the actions of appellants.''

In short, the contention seems to be that so long as one operates a ''den of iniquity,'' or other demoralizing business in a quiet, peaceful and gentle way he is beyond the pale of the law and should be let alone. This idea may have had its origin in the long ago when the common law of England did not regard ordinary gambling as an offense per se. 24 Am. Jur. Gaming and Prize Contests, secs. 11, 12, 38. It was once regarded in this state that buying of pools on horse races was not within the statute which fixed a penalty against suffering any game on premises at which money was bet. City of Louisville v. Wehmhoff, 116 Ky. 812, 78 S. W. 876, 79 S. W. 201. That is not the law now. In these later days all forms of gambling and the promotion thereof are condemned by the statutes (KRS 436.190 to 436.530) except betting through parimutuel machines at race courses under license by the state. KRS 436.480. But at common law a common gambling house was regarded as a common nuisance because of its tendencies to bring together disorderly persons, promote immorality and lead to breaches of the peace. Ehrlick v. Commonwealth, supra; 24 Am. Jur. Gaming and Prize Contest, sec. 38.

Stronger and stronger has become the disposition of the legislatures and the courts to extend the law of nuisances to every sort of gambling irrespective of its connection with other offenses, or of its potentiality of spawning them, or of other conditions which brought it within the classification of a nuisance in former days. It long ago ceased to be essential to injunctive redress that the gambling should be in view of the public or that the public be disturbed by noise therefrom. Nor is it requisite to show that dissolute or criminal characters frequent the premises or that respectable citizens have been ''forced to come in contact with a lower strata of society,'' as appellants submit. However, we suspect that none of the habitues of this place wore the halo of a saint or the wings of an angel. Thus the Chief of

Police of Louisville testified in one of the cases of the series decided today:

"I will say that at any time a good police officer is checking to look for a criminal we will always look for him at a place where gambling may be done or liquor may be purchased."

Neither principle nor precedent supports the absolution claimed by these defendants. If the moral fiber of its manhood and womanhood is not a state concern, we may ask, what is? The court does not falter for an answer.

The argument of the appellants is not new. It was put to this court nearly forty years ago and deliberately and clearly answered. We did not then and do not now perceive that the arm of justice is too short to protect the people from a vicious enterprise of this sort—from anything which tends to corrupt or destroy their morals and character. Said the court in Respass v. Commonwealth, supra, 131 Ky. 807, 809, 115 S. W. 1131, 1133, 21 L. R. A., N. S., 836, in affirming a judgment abating the operation of gambling houses, especially poolrooms of this kind:

"To say that a court of equity may not enjoin a nuisance of this sort, when the criminal laws have proven inadequate, is to say that the commonwealth is unable to protect its citizens. If it may protect its citizens by injunction from such a use of property as would breed a pestilence among the people, upon what principle can it be maintained that it may not by injunction prevent that use of property which, while it does not destroy the body, destroys the character, and leaves only the image of a man, unfitting him for the duties of citizenship?"

That opinion says a great deal pertinent to the instant case.

In Ehrlick v. Commonwealth, supra, 125 Ky. 742, 102 S. W. 289, 290, 10 L. R. A., N. S., 995, 128 Am. St. Rep. 269, the defendant had been convicted of maintaining a common nuisance of the same kind. There was evidence tending to show there was no noise or boisterous conduct. The court held that character of evidence to be wholly immaterial and constituted no defense,

saying that such a place constitutes a nuisance per se, and, "It is not permissible or excusable under any circumstances." The same conclusion is stated in Strader v. Commonwealth, 302 Ky. 330, 194 S. W. 2d 368.

And it is laid down in 46 C. J. 694, upon authority not only of the Kentucky cases but many others:

"The maintenance of a place where bookmaking, or pool selling is carried on is a nuisance, even though the place is conducted without noise or boisterous conduct, and regardless of the fact that the races are run at different points."

The appellants rely upon Neaf v. Palmer, 103 Ky. 496, 45 S. W. 506, 20 Ky. Law Rep. 176, 41 L. R. A. 219, where suit was brought by private citizens to enjoin the maintenance of a bawdy house in their community. In the course of the opinion it was observed there were no offensive sights or sounds about the obnoxious premises but only that plaintiffs claimed their property was made less valuable and the moral atmosphere tainted and pestilential. The court held the plaintiffs were not entitled to the injunction because there was nothing to indicate that the nuisance could not be suppressed by the ordinary methods appertaining to the criminal court, and plaintiffs' injuries were speculative. It is to be noted that there was a suit by private persons and not by the Commonwealth itself. This distinction of the Neaf case was noticed in the McGovern case, supra, 116 Ky. 212, 75 S. W. 261, 66 L. R. A. 280.

This ground of reversal, therefore, can not be sustained.

The suit is by the Commonwealth on relation of Eldon S. Dummit, Attorney General and Frank A. Ropke, Commonwealth's Attorney. The petition was prepared and filed by Mr. Ropke and Charles E. Keller, who volunteered his services as a public spirited attorney. Although the petition bore the name of Mr. Dummit as counsel, the defendants challenged it on the ground that it was not authorized by him. There was then filed the affidavit of the Attorney General that he had authorized the Commonwealth's attorney to institute the suit in his name. It is argued on the appeal that this was not sufficient; that the Attorney General's

responsibility is too great to permit him to orally delegate his authority to another; that the proceeding must have been initiated by the Attorney General after full personal investigation and consideration; and that authority must have been given in a more concrete form and a record made of it.

It was contended in Respass v. Commonwealth, supra, 131 Ky. 807, 115 S. W. 1131, 21 L. R. A., N. S., 836, that the Attorney General did not have authority to prosecute a suit of this character, but we held that he did. For the Attorney General to join with the Commonwealth's attorney, or authorize him to proceed in his name, is not a delegation or surrender of official responsibility. Certainly the Attorney General's formal adoption of the petition and proceeding in this case made it unassailable. But that was really not necessary. The statute imposes the duty and, therefore, grants the authority to the Commonwealth's attorney, except in Franklin County, to "attend to all civil cases and proceedings in which the Commonwealth is interested in the circuit courts of his district." KRS 69.010. It is too narrow a construction to say that this authority to "attend" negatives the authority to "institute." In Palestine Building Ass'n v. Minor, 86 S. W. 695, 27 Ky. Law Rep. 781, we stated that either the Commonwealth's attorney or the Attorney General may bring suit to abate a public nuisance. Stopping a public nuisance involving criminal acts is not so transcendent as to require the Attorney General in every instance to institute and prosecute the proceeding or to exclude any other public official or attorney of the state charged with public responsibility of similar character from doing so. It is everywhere recognized, though there appears to be no specific authority for it, that a Commonwealth's attorney may have a nuisance abated following conviction of the person maintaining it. There is no reason why that officer may not proceed independently of the criminal processes where they have proved ineffective. It is to be noted that the statutes give to the Commonwealth's attorney, or the county attorney, or any citizen the power to abate a house of prostitution as a nuisance (KRS 233.030) and to abate as a nuisance the use of property in relation to intoxicating liquor in local option territory. KRS 242.320, 242.340. The

general council and mayor of a city of the second class (KRS 84.220(3), 84.300(c) and the councils of cities of the third or fourth classes may abate nuisances. KRS 85.180, 86.150.

And because private counsel aided in the preparation and prosecution of the suit, by and in the name of public authority, to abate the public nuisance, was no ground for its dismissal nor for a reversal of the judgment. State v. Excelsior Power Mfg. Co., 259 Mo. 254, 169 S. W. 267, L. R. A., 1915A, 615; Commonwealth v. Roberta Coal Co., 186 Ky. 394, 216 S. W. 584.

We have given this case, and the companion cases, the careful consideration which the appellants request and regarded the consequences of affirmance which they suggest, namely, that "Courts of equity will become a cesspool for the trial of similar actions if appellees' contentions are upheld." Not "cesspools" but "filters."

The judgment is affirmed.